255 N.J. Super. 248 (1992)
604 A.2d 987
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RUBEN HOLMES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 3, 1992.
Decided March 31, 1992.
Before Judges ANTELL, LONG and THOMAS.
Wilfredo Caraballo, Public Defender, attorney for appellant (Frank J. Pugliese, Assistant Deputy Public Defender, of counsel and on the letter-brief).
Robert J. Del Tufo, Attorney General of New Jersey, attorney for respondent (James E. Jones, Jr., Deputy Attorney General, of counsel).
The opinion of the court was delivered by ANTELL, P.J.A.D.
*249 Defendant was convicted of possessing a controlled dangerous substance (cocaine) contrary to N.J.S.A. 2C:35-10a(1). He was thereafter sentenced to serve a four-year custodial term and ordered to pay a $1000 Drug Enforcement and Demand Reduction penalty, a $50 laboratory fee and a $30 Violent Crimes Compensation Board penalty. In addition, his driver's license was suspended for six months.
Defendant was arrested in the lobby of a Newark apartment building in the course of a police raid. According to the State's testimony, he had dropped a cellophane bag containing three vials of cocaine and a $50 bill onto the floor as the police entered. Both items were recovered. The defense directly challenged the credibility of the State's witnesses, and from the testimony given by defendant and his supporting witness it was maintained that upon entering the building they were confronted by five armed police officers who immediately searched them but found no contraband on their persons. According to defendant, the cellophane bag was actually found by the police in a fireplace within the lobby. This appeal from defendant's conviction focuses upon the effect of claimed prosecutorial excess in the State's opening and summation.
On opening, the prosecutor made the following statement to the jury:
Who has the interest, who has motive, who would come before you and lie? That will probably be what you will have to decide and I ask that you observe the witnesses as they testify for you and use your common sense. You all understand the particular drug problem that we have in this country, particularly Newark and I submit to you, that the police officers don't have to make up facts. [Emphasis added]
When defendant objected the trial court said only, "All right. I think just stay within the facts. You have your summations, Mr. [Prosecutor]."
The prosecutor returned to this theme in summation by saying, "[w]ith the war on drugs, he [the police witness] didn't have to come before you and fabricate these type [sic] of cases. *250 I submit to you he came before you and told you the truth." (Emphasis added).
The obligation of a prosecutor to refrain from improper methods of obtaining convictions is a recurrent subject of judicial comment. Berger v. United States, 295 U.S. 78, 84-89, 55 S.Ct. 629, 631-33, 79 L.Ed. 1314, 1319-22 (1935), State v. Rose, 112 N.J. 454, 518-524, 548 A.2d 1058 (1988); State v. Ramseur, 106 N.J. 123, 319-324, 524 A.2d 188 (1987); State v. Spano, 64 N.J. 566, 319 A.2d 217 (1974); State v. Ross, 249 N.J. Super. 246, 250, 592 A.2d 291 (App.Div. 1991), are only a few examples. As the Supreme Court stated in State v. Spano, supra, 64 N.J. at 568, 319 A.2d 217, "[t]here is now a plethora of cases where prosecutors have been admonished."
In State v. Rose, supra, the Court found reversible error in the prosecutor's conduct in "focusing the jury's attention on matters outside the scope of the record," such as by emphasizing the importance of preventing defendant from committing future acts of violence and the necessity to "send a message" to the community as to the penalty for crime. 112 N.J. at 519-20, 548 A.2d 1058. Similarly, in State v. Ramseur, supra, 106 N.J. at 321, 524 A.2d 188, it was held improper for the prosecutor to argue that the jury should impose the death penalty "to satisfy its responsibility to society." In State v. Spano, supra, plain error was found where the prosecutor interrupted defense counsel's opening statement to the effect that this was defendant's first opportunity to defend against the criminal charge for which he was on trial, to announce before the jury that the defendant "had the opportunity, if he so desired, to appear before the Grand Jury and give testimony." 64 N.J. at 567, 319 A.2d 217. Likewise, in State v. Ross, supra, we found plain error where the assistant prosecutor disingenuously argued to the jury that they should accept the presumed naivete of the young victim of an alleged sexual assault as proof of her truthfulness on the reasoning that the child could not have been familiar with the details of the offense had it not occurred, although the prosecutor knew that the child had previously *251 made similar complaints against others. 249 N.J. Super. at 250, 592 A.2d 291.
The role of a trial jury is well summarized in the following passage at 89 C.J.S. Trial § 462 at 91-92 (1955):
Generally, the deliberations and arrival at the verdict should be a process of determining the material facts from the evidence which has been introduced, and applying the law to such facts as instructed by the court; and every verdict should be the result of the exercise of judgment, reflection, and conscientious conviction on the part of the jury. The jurors must observe the rights of both parties and be indifferent and impartial, and immune from extraneous influence. The jury are bound to accept and apply the principles of law governing the case before them, and they are not authorized to depart from these principles simply because they judge it necessary to accomplish justice in the particular case. A verdict is invalid if it is arrived at by merely making a mathematical calculation rather than exercising judgment and weighing and considering the evidence, or if it is based on some theory evolved by the jurors themselves and not supported by any evidence. The jury should not be required to enter into their deliberations under circumstances calculated to prevent a full and fair consideration of the matters committed to their decision; and it is the duty of the trial court to see that their deliberations are not deflected by outside considerations. [Emphasis added].
We reject the State's argument that the impugned portions of its opening and closing statements were calculated only to persuade the jury that the police witnesses were believable because they had no reason to lie. "The particular drug problem that we have in this country, particularly in Newark," and "the war on drugs" are entirely irrelevant to the police witnesses' credibility. In our view the prosecutor's references were only a thinly-veiled attempt to inflame the jurors by identifying defendant with matters of public notoriety as to which no evidence was or could have been ever introduced.
Although the defendant objected to the prosecutor's opening statement, the objection was not sustained and no curative instruction was given to the jury. No objection was made when the prosecutor invoked the "war on drugs" on summation, but we regard that allusion, taken together with the prosecutor's challenged opening remark which went uncorrected by the court, as so inflammatory as to constitute plain error. The prosecutor's statements to the jurors were nothing less than a *252 call to arms which could only have been intended to promote a sense of partisanship incompatible with their duties. It was the jury's function, not to enlist in the war on drugs, but to listen to the evidence and decide in a dispassionate way the question of defendant's guilt. At the very least, we must conclude, as did the Supreme Court in State v. Ramseur, supra, 106 N.J. at 322, 524 A.2d 188, that "[s]tatements such as those made by the prosecutor are improper because they divert the jurors' attention from the facts of the case before them." See also State v. Rose, supra, 112 N.J. at 520, 548 A.2d 1058.
Reversed and remanded for a new trial.