891 P.2d 942

**STATE of Arizona, Appellee,**

v.

**Benjamin Lawrence WALKER, Appellant.**

No. 1 CA–CR 92–1710.

Court of Appeals of Arizona, Division 1, Department A.

March 16, 1995.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Div., and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Marshall D. Tandy, Tucson, for appellant.

## OPINION

TOCI, Judge.

Benjamin Lawrence Walker ("defendant") appeals his convictions and sentences for one count of transportation of marijuana for sale, a class 2 felony, and one count of escape in the second degree, a class 5 felony. He argues that the trial court erred by:

1. denying his motion for judgment of acquittal on both charges;
2. permitting a police expert to testify on the use of coded ledgers in drug trafficking and on "drug courier" profiles;
3. admitting a fingerprint card in the absence of adequate foundation;
4. denying his motion for mistrial on the ground of improper prosecutorial argument; and
5. denying his motion for a new trial.

We resolve these issues as follows. We find that the trial court properly denied defendant's motions for acquittal. We conclude that admission of testimony on the use of coded ledgers by drug traffickers was not error. We do not decide whether admission of the drug courier profile evidence was error because we conclude that, even if it was, admission of that evidence was harmless. Similarly, although the trial court erred in admitting the fingerprint card, we find that the error was harmless. Finally, we conclude that the trial court properly denied defendant's motions for mistrial and for a new trial. Accordingly, we affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND

In the early morning of March 12, 1992, defendant attempted to embark on an airline flight from Phoenix, Arizona to St. Louis, Missouri. When security personnel x-rayed a suitcase belonging to defendant, they observed three suspicious articles inside. Further investigation revealed that the items were tightly compressed bundles that contained forty-four pounds of marijuana. When placed under arrest by a police officer, defendant broke free of the officer's grasp. He fled to a nearby parking garage but was quickly apprehended.

At trial, defendant testified that the suitcase containing the marijuana did not belong to him. The jury found defendant guilty, and the trial court sentenced him to concurrent, presumptive prison terms of seven years for transportation of marijuana and two years for escape. The court also imposed a $30,800 fine. Defendant filed a timely notice of appeal.

## II. DISCUSSION

### A. Denial of Judgments of Acquittal

#### 1. Transportation of Marijuana For Sale

■ Defendant contends that the trial court erred in denying his motion for judgment of acquittal on transportation of marijuana for sale. He asserts that he was entitled to acquittal because there was insufficient evidence to connect him to the suitcase where the drug was found. We disagree.

■ A judgment of acquittal is only appropriate where there is "no substantial evidence to warrant a conviction." Ariz. R.Crim.P. 20; State v. Mathers, 165 Ariz. 64, 67, 796 P.2d 866, 869 (1990) (quoting Ariz. R.Crim.P. 20). "Substantial evidence is more than a mere scintilla" of evidence; it is evidence that " 'reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.' " Mathers, 165 Ariz. at 67, 796 P.2d at 869 (quoting State v. Jones, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980)).

Here, there was evidence from which reasonable persons could conclude that the suitcase containing the marijuana belonged to defendant. The security officer supervising the airport checkpoint testified that defendant admitted that the suitcase was his and that he gave the officer permission to search it. In addition, the suitcase contained a notebook bearing defendant's fingerprints and a

wall poster bearing the inscription "To Ben." The fact that this evidence was contradicted or impeached does not render it insufficient for purposes of judgment of acquittal. *See State v. Gallagher*, 169 Ariz. 202, 203, 818 P.2d 187, 188 (App.1991). Thus, the trial court's denial of judgment of acquittal on the charge of transportation of marijuana for sale was proper.

## 2. Escape in the Second Degree

■ Defendant's claim that there was insufficient evidence to support his conviction for second-degree escape primarily rests upon his interpretation of the statute defining that offense. In pertinent part, Ariz.Rev. Stat.Ann. ("A.R.S.") section 13–2503 (1989) states:

> A. *A person commits escape in the second degree by knowingly:*
>
> 1. Escaping or attempting to escape from a correctional facility; or
>
> 2. *Escaping or attempting to escape from custody imposed as a result of having been arrested for, charged with or found guilty of a felony.*
>
> B. Escape in the second degree is a class 5 felony....

(Emphasis added.) The nature of the underlying offense is the distinguishing factor between second-degree escape under subsection (A)(2) and third-degree escape. The third-degree escape statute provides:

> A. A person commits escape in the third degree if, having been arrested for, charged with or found guilty of a misdemeanor or petty offense, such person knowingly escapes or attempts to escape from custody.
>
> B. Escape in the third degree is a class 6 felony.

A.R.S. section 13–2502.

Defendant argues that he was entitled to a judgment of acquittal on the charge of second-degree escape because the state failed to prove that he knew he was under arrest for a felony. We reject this argument.

Although we have not previously considered whether knowledge of the nature of the arrest is a required element of second-degree escape, we have previously concluded that no such knowledge is required in cases of third-degree escape. *See State v. Mena*, 128 Ariz. 244, 246–47, 624 P.2d 1292, 1294–95 (App. 1980), *approved in part, vacated in part*, 128 Ariz. 226, 624 P.2d 1274 (1981). In *Mena*, the appellant contended that his conviction for third-degree escape was flawed because he was not informed, prior to his escape, that he was under arrest for disorderly conduct. In a portion of the opinion affirmed by our supreme court, we noted:

> Appellant was talking loudly, cursing and disrupting the investigation to such an extent that the officers were unable to interview the witnesses. When appellant was warned and refused to be quiet, one of the officers told the other to arrest appellant and put him in the police car. He was taken and locked in the police car. He was later charged with disorderly conduct. *When he was placed in the patrol car he had been arrested for disorderly conduct and it was not necessary for the law enforcement officers to inform him of the reason for the arrest in order to find him guilty of escape under the statute.*

*Id.* (emphasis added). Although *Mena* does not mention the relevant culpable mental state, the case makes clear that only the fact of the arrest for an underlying charge, and not defendant's knowledge of the nature of that charge, is a necessary element of third-degree escape.

It is not immediately apparent that our holding in *Mena* is applicable to cases involving second-degree escape. Under the third-degree escape statute applicable in *Mena*, the mental state of "knowingly" clearly applies to a defendant's act of "escape" or "attempt to escape from custody" and not to the attendant circumstance of misdemeanor or petty offense custody. *See* A.R.S. § 13–2502(A). But A.R.S. section 13–2503(A), the second-degree escape statute, sets out parallel elements—culpable mental state, culpable conduct, and the attendant circumstance of felony custody—in a slightly different order than the third-degree escape statute. The difference in syntax could be read to suggest that, for second-degree escape, a knowing mental state applies to all elements, including the nature of the arrest. *See* A.R.S. section

13–202(A) (if statute does not distinguish among elements of an offense, the mental state shall apply to each element of the offense "unless a contrary legislative purpose plainly appears").

We conclude, however, that it is obvious that the structure adopted by the legislature in the second-degree escape statute was only intended to accommodate the bifurcated definition of second-degree escape in subsections (A)(1) and (A)(2) of section 13–2503. It is true that the second-degree escape statute placed the requested mental state at the beginning of the definition of the offense, instead of immediately prior to the "escape" element as in the third-degree escape statute. Nevertheless, we believe the legislature did not intend to alter the nature of the offense from that defined in the third-degree escape statute.

It would be anomalous to hold that provisions enacted as part of the same statute, covering the same subject, and employing the same language would have fundamentally different elements merely because of differences in word order. See State v. Thomason, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App. 1989) ("A statute should be explained in conjunction with other statutes which relate to the same subject or have the same general purpose."); State v. Oehlerking, 147 Ariz. 266, 268, 709 P.2d 900, 902 (App.1985), disavowed in part by State v. Wilson, 150 Ariz. 602, 724 P.2d 1271 (App.1986) ("Where the same words or phrases appear in the same statute, they should be given a consistent meaning unless there is a clearly expressed legislative intention to the contrary."). Here, to find that our holding in Mena is inapplicable to second-degree escape would lead to the absurd result that it would be illegal for a person arrested for a misdemeanor to escape prior to learning the nature of his arrest, but it would be perfectly legal for one arrested for a felony to do so.

■ Because statutes should not be interpreted to result in absurdities, see City of Phoenix v. Superior Court, 144 Ariz. 172, 177, 696 P.2d 724, 729 (App.1985), we hold that the second-degree escape statute merely requires the prosecution to show that defendant was under arrest for a felony at the time of the escape, not that the defendant knew the nature of the arrest or its felony classification. Here, the arresting officer's testimony established that he arrested defendant for transportation of marijuana, a felony. Thus, there was sufficient evidence to establish this element of escape.

## B. "Drug Courier Profile" Testimony

During trial, defendant moved to preclude a police expert from testifying to the nature and meaning of notations in the notebook taken from the suitcase containing the marijuana. The prosecution claimed that the notebook was a drug transaction ledger. The trial court initially ruled that the police expert's testimony would be admitted, but later reversed itself and precluded the expert from attempting to translate the notations. Prior to defendant's motion, however, preliminary testimony had been admitted, over objection, regarding patterns of drug courier behavior. Specifically, the police expert testified to the general use of coded ledgers by drug dealers and to the "indicators" that narcotics detectives look for that "someone may be transporting drugs through the airport." Defendant argues that admission of this testimony was error warranting reversal. We disagree.

■ First, the officer's testimony that coded ledgers were commonly used in the drug trade was clearly admissible. Courts frequently permit expert testimony on such matters and even allow experts to interpret writings or conversations. State v. Nightwine, 137 Ariz. 499, 503, 671 P.2d 1289, 1293 (App.1983) (expert testimony interpreting drug language in telephone calls was properly admitted); United States v. Boissoneault, 926 F.2d 230, 233 (2d Cir.1991) (expert could testify that item seized was "an accounts receivable of what a person is owed by drug customers"); United States v. Theodoropoulos, 866 F.2d 587, 591 (3d Cir.1989) (meaning of coded conversations regarding drugs a "paradigm situation for expert testimony under Rule 702"); United States v. Carmona, 858 F.2d 66, 69 (2d Cir.1988) (expert testimony regarding the meaning of coded language in ledger properly admitted under Rule 702); United States v. Rollins, 862 F.2d 1282, 1292 (7th Cir.1988), cert. denied, 490 U.S. 1074,

109 S.Ct. 2084, 104 L.Ed.2d 648 (1989) (same); *United States v. Espinosa,* 827 F.2d 604, 611 (9th Cir.1987), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988) (no error to admit expert testimony that "pay and owe" ledgers contained names of defendant's cocaine buyers).

■ Similarly, we reject defendant's assertion that he was prejudiced by admission of the police expert's testimony regarding common behavior of drug couriers in airports. Defendant characterizes this testimony as "drug courier profile"[1] evidence and correctly points out that the use of such evidence as substantive proof of guilt has been condemned by the majority of courts that have considered the issue. *See, e.g., United States v. Williams,* 957 F.2d 1238, 1241 (5th Cir.1992); *United States v. Lui,* 941 F.2d 844 (9th Cir.1991); *United States v. Jones,* 913 F.2d 174, 177 (4th Cir.1990); *United States v. Carter,* 901 F.2d 683, 684 (8th Cir.1990); *United States v. Hernandez–Cuartas,* 717 F.2d 552, 555 (11th Cir.1983); *Louisiana v. Brown,* 370 So.2d 547, 554 (La. 1979); *Wilson v. Oklahoma,* 871 P.2d 46, 48–49 (Okla.Crim.App.1994); *Valcarcel v. Texas,* 765 S.W.2d 412, 418 (Tex.Crim.App.1989). *But see United States v. Foster,* 939 F.2d 445 (7th Cir.1991); *United States v. Teslim,* 869 F.2d 316, 324 (7th Cir.1989).

Although Arizona appellate courts have not directly considered the admissibility of drug courier profiles, in *State v. Cifuentes,* 171 Ariz. 257, 257, 830 P.2d 469, 469 (App.1991), we condemned the admission of car theft profile evidence. We concluded that the "use of profile evidence to indicate guilt ... creates too high a risk that a defendant will be convicted not for what he did but for what others are doing." *Id.*

■ Nevertheless, because defendant failed to assert the specific objection he now urges on appeal, the issue has been waived. *See* Ariz.R.Evid. 103(a)(1); *State v. Viertel,*

130 Ariz. 364, 366, 636 P.2d 142, 144 (App. 1981). Here, defendant raised only a general objection before the police expert testified about the indicators of airport drug trafficking. As a result, our review is limited to determining whether the admission of this testimony constituted fundamental error. *Id.* at 366, 636 P.2d at 144; *State v. Rankovich,* 159 Ariz. 116, 121, 765 P.2d 518, 523 (1988).

The officer testified to several aspects of the drug courier profile. Specifically, the police expert testified that, in monitoring airports for possible drug transportation, officers look to see if a passenger is nervous, carries new baggage, or pays cash for a one-way ticket to an east coast city known as a destination for marijuana shipments. He also said that couriers arrive at the airport shortly before their flights' departures to minimize the chance of being spotted by police.

■ Error is fundamental only where it goes to the foundation of the case or is of such a dimension that it cannot be said that defendant received a fair trial. *Id.* Under this standard, we find no fundamental error. Defendant was not prejudiced by the presentation of this profile. No evidence was introduced to connect defendant to three of the factors the police expert associated with drug couriers: no testimony indicated that defendant was nervous, that his suitcase was new, or that he paid cash for his ticket.

The fact that defendant was bound for a city identified as a destination for marijuana shipments and the fact that he arrived for boarding minutes before takeoff, did conform to the profile.[2] These facts, however, had, at worst, a neutral effect at trial. Defendant did not dispute that *someone* attempted to transport marijuana on his flight; rather he argued that he did not do so. In light of this defense, the police expert's testimony may have aided defendant's claim that the mari-

---

1. A drug courier profile has been defined as an " 'informal compilation of characteristics often displayed by those trafficking in drugs,' " and as an " 'abstract of characteristics found to be typical of persons transporting illegal drugs.' " *United States v. Quigley,* 890 F.2d 1019, 1021 (8th Cir.1989), *cert. denied,* 493 U.S. 1091, 110

S.Ct. 1163, 107 L.Ed.2d 1066 (1990) (citations omitted).

2. A police officer testified, however, that defendant was at the airport, in another terminal, hours before his arrest. Defendant confirmed this in his testimony.

juana belonged to one of several other persons who also arrived late and rushed to board the plane at the same time he did. Accordingly, we conclude that defendant was not denied a fair trial by admission of this limited evidence.

## C. Admission of Fingerprint Card

■ Over defendant's objection, the state introduced in evidence a photocopy of a fingerprint card labeled with defendant's name. On appeal, defendant contends that there was insufficient evidence to authenticate the document. We agree. The prosecutor all but conceded the absence of foundation regarding the document's authenticity. Nevertheless, the trial judge admitted the exhibit after the prosecutor stated that the document was a "business record" of the police department. Such an avowal was insufficient to support the admission of the document as either a public record or a business record. *See* Ariz.R.Evid. 803(6), 901(b)(7); *State v. Stotts*, 144 Ariz. 72, 82–83, 695 P.2d 1110, 1120–21 (1985).

■ An error in the admission of evidence over objection will not warrant reversal, however, if substantial evidence supports the verdict and if it can be said beyond a reasonable doubt that the error did not contribute to the verdict. *Rankovich*, 159 Ariz. at 120, 765 P.2d at 522. Here, before the photocopy was offered by the state, a fingerprint technician testified without objection that defendant's latent prints were found on the notebook. Moreover, defendant admitted that the notebook belonged to him, virtually conceding the truth of the fingerprint testimony. Thus, it is clear beyond a reasonable doubt that admission of the fingerprint card did not affect the jury's verdicts.

## D. Improper Closing Argument

■ During her closing argument, the prosecutor stated: "The first thing I'd like to talk to you about is the war on drugs and every one of you has heard about the war on drugs." Defense counsel immediately objected. The judge ordered the prosecutor to continue her argument, stating that he would rule on objections when she concluded. The prosecutor continued:

> You've all heard about the war on drugs, ladies and gentlemen, and you've heard testimony in this Court that Phoenix is a distribution center for some of the drugs that go out throughout this country, often to east-coast cities, certainly due to the proximity that we are to the border.
>
> And every one of you who's ever heard about the war on drugs and wanted to do anything about the war on drugs, this is your opportunity to see what is going on in the front battle lines because, ladies and gentlemen, this case involves a substantial amount of marijuana. You've all seen it. It's in these boxes and you'll have an opportunity probably to look at it later.

After the prosecutor completed her argument, defense counsel moved for a mistrial, which was denied.

■ On appeal, defendant contends that the prosecutor's argument constituted misconduct warranting reversal. Trial attorneys are accorded wide latitude in closing arguments. *State v. Herrera*, 174 Ariz. 387, 396, 850 P.2d 100, 109 (1993). Nevertheless, a prosecutor exceeds this authority if she uses her remarks "to inflame the minds of jurors with passion or prejudice or influence the verdict in any degree." *Id.* (quoting *State v. Merryman*, 79 Ariz. 73, 75, 283 P.2d 239, 241 (1955)).

Although use of the phrase "war on drugs" in prosecutorial argument has engendered appellate litigation elsewhere, Arizona courts have not considered its propriety.[3] Our su-

3. The cases are closely divided. Some courts considering the issue have held such argument to be reversible error. *See, e.g., Arrieta–Agressot v. United States*, 3 F.3d 525, 527 (1st Cir.1993); *United States v. Solivan*, 937 F.2d 1146, 1153 (6th Cir.1991); *New Jersey v. Holmes*, 255 N.J.Super. 248, 604 A.2d 987, 989 (1992); *Ohio v. Draughn*, 76 Ohio App.3d 664, 602 N.E.2d 790, 793–95 (1992); *Washington v. Echevarria*, 71 Wash.App. 595, 860 P.2d 420 (1993); *cf. United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 2751, 129 L.Ed.2d 869 (1994) (argument improper but not reversible error); *People v. Graves*, 194 A.D.2d 925, 598 N.Y.S.2d 855, 857 (1993) (argument improper but harmless). Other courts have held the reference to be within the scope of proper prosecutorial argument. *See, e.g., People*

preme court has held, however, that "arguments referring to the prevalence of crime, the duty of the jury, and the efforts of the police in combatting crime are not improper." *State v. Sullivan,* 130 Ariz. 213, 219, 635 P.2d 501, 507 (1981). Under this standard, the supreme court has found no error in argument far more pointed than the one at issue here. *See id.* at 218, 635 P.2d at 506 (allowing argument that "the State depends on people like you to send a message out to the pushers that this is not going to be permitted anymore ... that's why we are here today, to convict the defendant of this"); *State v. Jaramillo,* 110 Ariz. 481, 483, 520 P.2d 1105, 1107 (1974) (no error in argument to jury, "You will never in any of your lifetime have a better opportunity to do something about the drug problem, particularly about heroin sellers, than you've got here today in court.").

The remarks at issue in this case were not inflammatory. Although the prosecutor suggested at one point that the jurors may have "wanted to do something about the war on drugs," she avoided any rhetorical attempt to enlist them in that cause. Rather, the prosecutor followed that remark by stating that the jurors had an opportunity to "see what is going on in the front battle lines" by viewing the marijuana seized and introduced at trial. Such an argument, linked to evidence presented at trial, was not improper because it did not urge the jury to convict defendant " 'for reasons wholly irrelevant to his own guilt or innocence.' " *Herrera,* 174 Ariz. at 397, 850 P.2d at 110 (quoting *United States v. Monaghan,* 741 F.2d 1434, 1441 (D.C.Cir. 1984), *cert. denied,* 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985)).

### E.   Denial of New Trial Motion

■   In his motion for a new trial, defendant asserted that he had been prejudiced by the introduction of evidence that had been materially altered after it was seized by police at the time of his arrest. Specifically, defendant complained that when a receipt for

excess baggage was admitted into evidence, it was stapled to his airline ticket. Testimony at trial, however, indicated that those items had not been stapled when they were recovered from the floor of the airport terminal. The excess baggage receipt tended to connect defendant to the marijuana-laden suitcase and also contradicted his testimony that he traveled with only small carry-on bags. Defendant contends that he was therefore entitled to a new trial because the evidence was not "properly admitted" and, thus, he was denied a "fair and impartial trial." *See* Ariz.R.Crim.P. 24.1(c)(3)(i), 24.1(c)(5). We reject this contention.

The exhibit was admitted without objection at trial. Thus, defendant waived his right to assert the matter absent fundamental error denying defendant a fair trial. *See Rankovich,* 159 Ariz. at 121, 765 P.2d at 523. Here, admission of the exhibit did not deny defendant a fair trial. The officer who searched defendant's belongings testified that the ticket and baggage receipt were not stapled together when he recovered them. This testimony informed the jury of the true condition of the exhibit at the time of defendant's arrest. In addition, defendant admitted that both the ticket and the receipt were in his possession immediately prior to his arrest, though he maintained that an airline clerk had given him the receipt by mistake. As a result of this testimony, the jury would not have connected defendant to the receipt merely because it was stapled to his ticket.

■   The fact that one juror stated in an affidavit that the staple influenced her verdict does not alter our conclusion. The trial judge correctly ruled that the affidavit was inadmissible on the ground that it inquired into the "subjective motives or mental processes" that led to the juror's verdict. Ariz.R.Crim.P. 24.1(d). Because it is impossible to predict what decision a juror may have reached if further deliberation had continued, juror affidavits in support of a motion

---

*v. Peterson,* 248 Ill.App.3d 28, 187 Ill.Dec. 797, 804, 618 N.E.2d 388, 395 (1993) (reference was "permissive comment on the evils of crime and fearless administration of justice"); *Elswick v. Indiana,* 565 N.E.2d 1123, 1126 (Ind.App.1991); *Martinez v. Texas,* 826 S.W.2d 807, 808 (Tex.App.

1992) (reference proper as "plea for law enforcement"). In addition, the reference has been held proper as an argument for imposing a stiff sentence in a jury-sentencing jurisdiction. *See, e.g., Missouri v. Jeffries,* 858 S.W.2d 821, 824–25 (Mo. App.1993).

for new trial are admissible only on the issues of jury misconduct specified in Rule 24.1(c)(3). *State v. Poland,* 132 Ariz. 269, 282, 645 P.2d 784, 797 (1982). Here, the alleged ground for new trial does not involve juror misconduct. Thus, the jurors' affidavits or testimony cannot be considered. Ariz.R.Crim.P. 24.1(d).

■ We also reject defendant's contention that the trial court abused its discretion by denying his motion for a new trial without an evidentiary hearing. The defendant conceded that he only desired an evidentiary hearing to present testimony by the jurors. For the reasons noted above, at such a hearing testimony by the jurors to their subjective mental processes would have been impermissible. Thus, the trial court's procedure in denying the motion for a new trial was proper.

## III. CONCLUSION

Pursuant to A.R.S. section 13–4035, we have reviewed the entire record on appeal. We find no fundamental error. Defendant's convictions and sentences are affirmed.

· CONTRERAS, P.J., and EHRLICH, J., concur.

892 P.2d 205

STATE of Arizona, Appellant,

v.

Vincent KEYONNIE, aka Alvin
Keyonnie, Appellee.

No. 1 CA–CR 93–0469.

Court of Appeals of Arizona,
Division 1, Department B.

March 14, 1995.

Melvin R. Bowers, Jr., Navajo County
Atty. by Joel H. Ruechel, Deputy County
Atty., Holbrook, for appellant.

Dan L. Jones, Pinetop, for appellee.

## OPINION

EHRLICH, Judge.

The state appeals the trial court's dismissal with prejudice of the charges pending against Vincent Keyonnie ("defendant"). Because we find that the trial court erred, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

At approximately 4:40 a.m. on May 24, 1992, Officer Steve Garnett of the Winslow Police Department found the defendant asleep behind the wheel of a 1990 Chevrolet pickup, its lights on and the engine running. Recognizing the defendant from earlier encounters, and recalling that his driver's license was suspended, Officer Garnett arrested the defendant. The officer also noted the distinct odor of alcohol and the defendant's slurred speech and difficulty standing. The defendant was taken to the Winslow Police Department and read his *Miranda* rights.[1] The defendant responded: "Lawyer present today, right now."

Despite the request for an attorney, Officer Garnett continued processing the defendant. He advised him of the Implied Consent Law, Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–691, and, after waiting the required twenty-minute observation period,[2] adminis-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Formerly A.R.S. § 28–692.03(A)(3), renumbered as § 28–695(A)(3) by 1992 Sess.Laws, ch. 330 §§ 24, subsec. B, 26.

tered an Intoxilyzer Breath Test. The test showed the defendant's blood-alcohol concentration ("BAC") to be .166%. The defendant was also informed of his right to obtain an independent blood test, a right that he stated he wished to exercise. Officer Garnett then released the defendant and drove him to a hospital in Winslow so that he might arrange for the blood test. Approximately 30 to 35 minutes elapsed between the time the defendant requested an attorney and his release.

The defendant was charged with one count of aggravated driving under the influence of intoxicating liquor ("DUI") and on a suspended license, a class 5 felony,[3] and one count of aggravated driving with a BAC of .10% or more, also a class 5 felony.[4] At the pre-trial voluntariness hearing, Officer Garnett testified that he did not believe that he had provided the defendant with an opportunity to contact an attorney. The trial court found that the defendant had requested an attorney, that he was not provided an occasion to contact one and that contacting an attorney prior to the administration of the breath test would not have interfered with the officer's investigation. The court also stated that there was no evidence indicating that the officer had interfered with the defendant's efforts to obtain exculpatory evidence nor was there any showing that any exculpatory evidence was lost or destroyed during the 30 to 35 minute period at issue. Nonetheless, based upon the decisions in *McNutt v. Superior Court*, 133 Ariz. 7, 648 P.2d 122 (1982), and *State v. Holland*, 147 Ariz. 453, 711 P.2d 592 (1985), the court dismissed both counts with prejudice, ruling that dismissal, and not suppression of the breath test, was the remedy for the violation of the defendant's Sixth Amendment right to counsel. The state timely appealed.

5. Rule 6.1(a) at the time provided:

    a. **Right to be Represented by Counsel.** A defendant shall be entitled to be represented by