819 A.2d 424 (2003)
359 N.J. Super. 123
STATE of New Jersey, Plaintiff-Respondent,
v.
Augostinho MORAIS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 2003.
Decided April 1, 2003.
*425 Fusco & Macaluso, Passaic, for appellant (Michael J. Montanari, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, for respondent (Teresa A. Blair, Deputy Attorney General, of counsel and on the brief).
Before Judges BRAITHWAITE, PARKER and BILDER.
The opinion of the court was delivered by PARKER, J.A.D.
Defendant appeals from his conviction by a jury of fourth degree false swearing, N.J.S.A. 2C:28-2 (Count 10). He was acquitted *426 on the remaining counts alleging official misconduct, terroristic threats, filing a false police report and aggravated assault. He was sentenced to two years probation and fined $1,500 in addition to the mandatory penalties and assessments. We affirm.
Defendant was a Newark Police Officer assigned to the Narcotics Interdiction To Remove Open Air Narcotics (NITRO) unit. On September 28, 1999, he and his partner/co-defendant came upon Tyree Collins, a/k/a Raqui Gilbert, riding a bicycle on his way to a Kennedy's Fried Chicken to buy cigarettes at 2:00 a.m. The co-defendants were in plain clothes, driving an unmarked white Jeep when they pulled alongside Collins and called him to come over. Thinking they were "stick-up kids," Collins rode away and kept riding on alternate sides of the streets until he reached the parking garage of Beth Israel Hospital. By that time, he realized the men were police officers but was afraid to stop because he had been beaten by police officers in the past. Collins jumped over a wall where he was a found a few minutes later by defendant. Collins pleaded with defendant not to hit him, but defendant hit him above the eye with his flash light.
Collins was taken into custody, and the officers called for backup to search the area. Collins had no drugs on his person, nor were there any drugs found in the area where he was arrested. The officers took him to the precinct station, and about forty-five minutes later, another officer came into the station holding a bag containing eight to ten bags of marijuana. Collins denied that the marijuana belonged to him but he was, nevertheless, charged with possession of a controlled dangerous substance (CDS) and possession with the intent to distribute in a school zone.
Collins remained in custody for two days. After his release, he reported the incident to the Internal Affairs Bureau (IAB). An investigation was undertaken and Lt. Ronald Kinder of the IAB retrieved an audiotape from the precinct with recorded conversations of defendant, co-defendant and Collins between 2:18 a.m. and 2:40 a.m. that night. Defendant and his partner were ultimately charged in a thirteen count indictment.
In this appeal, defendant argues:
POINT I
THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO SPEAKING [SIC] DIRECTLY TO A JUROR DURING HIS SUMMATION AND ASKED JURORS TO CALL ON PERSONAL EXPERIENCE NOT FACTS TO REACH A VERDICT.
POINT II
DEFENDANT MORAIS WAS DENIED HIS RIGHT TO A FAIR TRIAL BECAUSE THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO USE THE TERM "BLUE WALL."
POINT III
THE TRIAL COURT ERRED IN MISLEADING THE JURY IN ITS PROPER ROLE.
POINT IV
THE TRIAL COURT ERRED IN NOT PERMITTING THE FIELD OPERATIONS MEMORANDUM INTO EVIDENCE.
POINT V
THE TRIAL COURT ERRED IN NOT CHARGING THE JURY ON THE LAW OF POSSESSION WITH INTENT TO DISTRIBUTE.

I
In his first three points, defendant contends that reversible error occurred during *427 the prosecutor's closing argument. He argues that (1) the prosecutor improperly spoke directly to a juror; (2) the prosecutor improperly referred to the "blue wall" when describing the testimony of defendant's fellow police officers; and (3) the prosecutor improperly called upon the jury to insure the integrity and honesty of all police officers by convicting defendant.
Counsel for co-defendant gave the first closing argument and told the jury: "Make no bones about it, ladies and gentlemen, the war that is being waged out there is a war against drugs, a war against crime, but a war against drugs. That's why this NITRO unit was created." He told the jury that the City of Newark wanted cops to be aggressive and to attack the "cancer" of drug use and that the City invested a lot of money and manpower to make sure that people like Collins did not come into the City to buy or sell drugs. Counsel also argued that the State wanted the jury to judge whether the officers did anything wrong even though the jurors did not have any law enforcement background and were not provided with any rules or regulations by which to judge defendants' conduct. He maintained that common sense was not enough in this case. Holding a badge holder in one hand and the eight bags of marijuana in the other, counsel asked the jurors to choose between the two:
This badge holder once proudly held the badges of two officers who would have done anything to protect the citizens of this city.
And in this hand, I give you the eight bags of weed and a dollar bill to show you what Tyree Collins is.... You want this or you want to do justice.
Defendant's counsel summed up next: "When a policeman takes an oath, he swears to God that he's going to protect and serve. Protect and serve. And you know what, it's not easy being a cop." According to counsel, "[T]his whole case has turned justice on its end."
The prosecutor summed up last. He commented that the case was about the "police being honest. It's about the police being accountable to the law." The prosecutor noted that "the defense would like you to see this case ... as Tyree Collins being on trial." But consider the audiotape, he told the jury. "The tape is the one unimpeachable witness that we have in this case." The prosecutor noted that these specially trained narcotics cops should have searched Collins immediately after handcuffing and arresting him: "Isn't that logical? Isn't that what you would expect a cop to do? You know, many of you know police officers. I believe when you were questioned during the jury voir dire, someone, you're married to a cop, I even think."
Defendants immediately objected to the prosecutor's personal reference to one of the jurors and moved for a mistrial. The court found that, in context, the prosecutor's remarks were proper and denied the application for a mistrial.
Later in his summation, the prosecutor disputed the credibility of Officers Dupont, Grosso and Sheppard when they claimed that they did not know what went on that night:
Do you think for one second that these guys didn't talk when they were down there that night looking for these drugs? They all said, no, we didn't. No, we don't know nothing [sic].
See, this is all part of the blue wall here, too. You have to keep that in mind.... (Emphasis added).
Defendants' objection to the "blue wall" reference was overruled and the prosecutor continued:
This is part [of] the blue wall. I suggest to you these guys are being less than *428 forthcoming, Dupont, Grosso, and Sheppard, all three of them. And they didn't know exactly what went on in there that night. Dupont himself took the stand and said, I came back into the district. I think I remember seeing those guys there, yeah, I do. (Emphasis added).
The prosecutor then turned his attention to the significance of this case for the criminal justice system:
It's about insuring that the police are honest, that they don't on their own decide what the law is going to be, and make things up on people; that we can count on them when they come into this witness stand and testify on trials, put their hands on the Bible and sit here and testify in trials ranging from murder to rape.
Defense counsel objected, and the judge told the prosecutor to keep to the facts and "[j]ust rephrase it." The prosecutor then stated:
When they come in to testify at trial where a person's guilt or innocence hangs in the balance, a person's liberty hangs in a balance, there's nothing more important than that people who live here, all of us have confidence that that officer who may be looking over to a defendant and saying, yes, that person right over there, that's the person who I caught, that's the person who was robbing someone, that's the person who had drugs right there, that guy right there, I caught him with fifty decks of heroin, OK, and he was trying to
Another defense objection was overruled, and the prosecutor concluded by saying, "What's more important than that, people like all of us who sit on juries have confidence that that officer is telling the truth."
After the jury was excused for the day, defense counsel once again stated their various objections to the prosecutor's closing argument. The court agreed that the prosecutor should not have made a comment to a particular juror but found that "in the context of what he was talking about, which essentially is the police ... are just like everybody else. There's absolutely nothing ... that suggests any ... intimidation." Moreover, the judge said:
Again I think the prosecutor used appropriate judgment in talking to the jury about their life experience and the fact that some [of] you in your life experiences have dealt with police. You may have even had them in your family. That's the kind of comments that clearly are more appropriate, but there's nothing in what he said that in any way suggests intimidation, and in any way even combined with the other arguments that counsel would make rise to the level of depriving these defendants of substantial justice, having the potential to affect the decision in this case.
And so for that reason ... I am denying the mistrial application.
The judge invited counsel to submit a proposed curative instruction if they wished to do so the following day. They did not. In his jury instructions, the judge included the model charge that opening arguments and summations of counsel are not evidence.
Prosecutors are afforded considerable leeway in their closing arguments as long as their comments are reasonably related to the scope of the evidence presented. State v. Papasavvas, 163 N.J. 565, 616, 751 A.2d 40, mod. on other grounds, 164 N.J. 553, 753 A.2d 1148 (2000); State v. Timmendequas, 161 N.J. 515, 587, 737 A.2d 55 (1999), cert. denied, 534 U.S. 858, 122 S.Ct. 136, 151 L.Ed.2d 89 (2001); State v. Frost, 158 N.J. 76, 82, 727 A.2d 1 (1999). Although prosecutors are expected to make vigorous and forceful closing arguments, their primary duty is to see that *429 justice is done. Timmendequas, supra, 161 N.J. at 587, 737 A.2d 55; Frost, supra, 158 N.J. at 82-83, 727 A.2d 1. Prosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence. State v. Munoz, 340 N.J.Super. 204, 216, 774 A.2d 515 (App.Div.), certif. denied sub nom. State v. Pantoja, 169 N.J. 610, 782 A.2d 427 (2001). Prosecutorial misconduct will constitute grounds for reversal only where it is so egregious as to deprive defendants of a fair trial. Papasavvas, supra, 163 N.J. at 616, 751 A.2d 40; Timmendequas, supra, 161 N.J. at 575, 737 A.2d 55; Frost, supra, 158 N.J. at 83, 727 A.2d 1.
We have not previously addressed the question of whether a prosecutor's remarks to a particular juror are improper. Other states have, however, concluded that they are. E.g., Twait v. Olson, 104 Ill. App.3d 191, 60 Ill.Dec. 345, 432 N.E.2d 1244, 1249 (1982) (it is improper to address individual jurors in an attempt to play upon their personal circumstances, such as age); Clark v. Johnson Bros. Constr., 370 N.W.2d 896, 900 (Minn.Ct.App.1985) (singling out a juror and appealing to him by name is improper); Henderson v. Union Pac. R. Co., 189 Or. 145, 219 P.2d 170, 183 (1950) (it is improper to address individual jurors by name and extract from them oral agreements regarding certain statements made by counsel); Peters v. Hoisington, 72 S.D. 542, 37 N.W.2d 410, 414 (1949) (it is improper to address individual jurors by name or single out a particular juror and personally appeal to him or her).
We agree with those courts that it is improper for an attorney to refer to a juror individually by name, experience or background. Here, although the prosecutor did not refer to the juror by name, he singled out an individual who was married to, or previously married to, a police officer. There was an immediate objection by defense counsel followed by an admonition from the judge after which the prosecutor appropriately called upon all jurors to draw from their personal experiences and common sense in judging the credibility of the police officers. Under these circumstances, the prosecutor's reference to a particular juror was harmless.
With respect to defendant's argument that the prosecutor improperly impugned the credibility of all police officers by referring to the "blue wall," we find that it was fair comment under the circumstances. The term "blue wall" is common parlance for police officers' reluctance to incriminate their fellow officers. E.g., Simon v. City of Naperville, 88 F.Supp.2d 872, 876 (N.D.Ill.2000) (the blue wall of silence is a well-established phenomenon that may shield police from investigators and discipline for misconduct in a variety of circumstances); Ricciuti v. New York City Transit Auth., 70 F.Supp.2d 300, 333-34 (S.D.N.Y.1999) (the blue wall of silence is a "distressingly familiar phenomenon" which typically arises when a police officer is charged with misconduct and other members of the squad remain mute, despite their personal knowledge of the facts.)
While there are numerous cases referring to the impropriety of prosecutors referring to the credibility of police officers, those cases all involve officers testifying for the state, rather than for the defense. In questioning the credibility of the officers in this case, the prosecutor was making fair comment on defendants' witnesses and responding to defense counsels' arguments. State v. Munoz, supra, 340 N.J.Super. at 204, 774 A.2d 515.
Finally, with respect to the prosecutor's comments regarding the integrity of the criminal justice system, defendant *430 analogizes the prosecutor's remarks to the "call to arms" or "send a message" line of cases in which we sanctioned prosecutors for urging juries to return convictions in order to protect the community and send a message to the criminals; e.g., State v. Hawk, 327 N.J.Super. 276, 282, 743 A.2d 325 (App.Div.2000) (prosecutor's "send a message" remark in summation was inflammatory and inappropriate); State v. Goode, 278 N.J.Super. 85, 89, 650 A.2d 393 (App.Div.1994) (prosecutor's comment that the jurors could "make a difference in [their] community" was a "call to arms" intended to promote partisanship incompatible with the duties of the jurors); State v. Holmes, 255 N.J.Super. 248, 251-52, 604 A.2d 987 (App.Div.1992) (prosecutor's reference to "war on drugs" going on in the community was improper).
Here, it was defense counsel who referred to the war on drugs and urged the jurors to protect their community and send a message to the criminals. Defense counsel asked the jurors to acquit the officers and reject Collins' testimony because he was a known drug dealer. Faced with these comments, the prosecutor responded appropriately. See, Hawk, supra, 327 N.J.Super. at 284, 743 A.2d 325 (prosecutor need not sit idle while defense counsel attacks the credibility of the State's witnesses). We must take into account defense counsel's "opening salvo." Munoz, supra, 340 N.J.Super. at 216, 774 A.2d 515. When considered in the context of this trial and defense counsels' closing arguments, the prosecutor's remarks "balance[d] the scales." Ibid.
We conclude that defendant suffered no prejudices as a result of the prosecutor's closing argument. Defendant was acquitted of all but one charge, false swearing. The jury was apparently convinced that the eight bags of marijuana were not found on Collins' person at the time of his arrest and that the complaint against Collins was manufactured by defendant. The verdict is adequately supported by the credible evidence in the record.

II
Defendant next argues that the trial judge erred in refusing to admit into evidence the field operations memorandum dated December 14, 1989, issued by then-Deputy Chief Steven Patella. Captain Daniel Zieser, the night commander of the NITRO unit on the night of this incident, read part of the field operations memo to the jury:
Paragraph B: "The practice of listing all other officers at the scene of the incident report and in the complaint shall cease immediately."
Patella was retired at the time of trial and when defense counsel attempted to cross-examine Zieser on why the memo was issued, the prosecutor objected. The judge overruled the objection, allowing the cross-examination during which Zieser was asked why the memo was issued in 1989. Zieser testified that it was because the municipal and county prosecutors subpoenaed all officers listed on the police report and the court overtime expenditures had risen above acceptable levels.
Defense counsel moved the memo into evidence, but the judge denied the motion because the document was hearsay and duplicative of Zieser's testimony. Defendant claimed that the memo was relevant to his explanation of why he only listed himself and his partner on the incident report for Collins' arrest although numerous other officers were present at the scene.
The substance of the memo was read to the jury and Zieser was permitted to testify extensively as to the purpose of the *431 memo. The trial judge properly excluded the memo as cumulative.

III
During deliberations, the jury sent a note requesting clarification on the law of possession. Counsel for co-defendant responded, "This is not in the case, especially with regard to law." Defendant's counsel responded similarly, stating, "I agree with Mr. Fusco" and added: "I think you have to tell them that you can't, that it's not in the case in chief, and you can't do it."
The court adjourned for the day and the next morning, defendant's counsel indicated that he had thought about the question overnight and that, "[t]he problem with recharging them in any fashion as to any law that hasn't been charged is we didn't have a chance to sum up on it, if that was an issue in the case." Defendant's counsel suggested that the judge advise the jurors "that they are to rely on the charge in this case that was given by Your Honor and that you would be happy to recharge them on any portion of the charge they have already received."
Defendant now argues that the judge should have charged the law on possession in response to the jury's question, albeit counsel argued against such a charge. Defendant is required to challenge instructions at the time of trial. R. 1:7-2. Where there is a failure to object, it may be presumed that the instructions were adequate. State v. Macon, 57 N.J. 325, 333, 273 A.2d 1 (1971). The absence of an objection to a charge is also indicative that trial counsel perceived no prejudice would result. State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973). Consequently, we should only reverse if we find plain error. R. 2:10-2. Plain error, in the context of the jury charge, is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Afanador, 151 N.J. 41, 54, 697 A.2d 529 (1997) (quoting State v. Jordan, 147 N.J. 409, 422, 688 A.2d 97 (1997)).
We find no error, much less plain error, here. At trial, defendants attempted to focus the jury's attention on Collins, rather than on defendants. Apparently, the jury did focus on Collins and whether he was in possession of the drugs as defendants had alleged. The court correctly declined to include the definition of possession because Collins' guilt or innocence of possession was not at issue.
Affirmed.