NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SEAN J. CAHILL, *Appellant*.

No. 1 CA-CR 14-0165
FILED 8-13-2015

Appeal from the Superior Court in Maricopa County
No. CR2010-005843-001
The Honorable Jerry Bernstein, Judge Pro Tempore

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Maurice Portley delivered the decision of the Court, in which Judge John C. Gemmill and Judge Michael J. Brown joined.

---

**P O R T L E Y**, Judge:

¶1  Defendant Sean J. Cahill appeals his convictions and the resulting sentences for two counts of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs. He argues that the prosecutor committed misconduct by misstating the law, appealing to the passions of the jury, and engaging in vouching. For the following reasons, we affirm.

## FACTS[1] AND PROCEDURAL BACKGROUND

¶2  Detective Florence was dispatched on September 18, 2007, to check on a person in a car at a gas station parking lot. The detective found Cahill asleep in the driver's seat of a car with the engine running. The detective knocked on the window, startling Cahill who sat up and "hit the steering wheel like as if someone would honk the horn." The detective found Cahill was "obviously confused" because Cahill reached for the gearshift, but then reached up and turned the ignition key. Because the engine was already running, the starter "grinded (sic) pretty substantially."

¶3  Detective Florence then opened the driver's side door and asked Cahill to get out of the car. Although Cahill told the detective he was a chauffeur and was waiting to pick up a customer, he volunteered that he had been arrested earlier that morning for driving under the influence.

¶4  Two other police officers arrived and continued the "impaired driver investigation." Cahill admitted that he had taken "two doses of two milligrams of Ativan," but stated he had gotten the drugs from a client. Cahill performed poorly on two field sobriety tests and was arrested. When searching the vehicle, the officers found three prescription bottles including one for Lorazepam (also known as "Ativan").

---

[1] We view the facts in the light most favorable to upholding the convictions. *State v. Lowery*, 230 Ariz. 536, 538, ¶ 2, 287 P.3d 830, 832 (App. 2012) (citation omitted).

**¶5**         At the police station, Cahill voluntarily spoke with Officer Krueger, a drug recognition expert, and participated in other sobriety tests. Cahill also provided a urine sample, which tested positive for methamphetamine and amphetamine. Cahill was subsequently indicted.

**¶6**         On the final day of trial, Cahill failed to appear. The jury, however, found him guilty as charged. After delays caused by his arrest, release, and then failures to appear for sentencing, Cahill was subsequently arrested and sentenced to concurrent prison terms of five months, with fifty-one days of presentence incarceration credit, and upon release would be on probation for three years.

**¶7**         Cahill filed a notice of appeal. We have jurisdiction under Arizona Constitution Article VI, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and -4033.[2]

## DISCUSSION

**¶8**         Cahill argues that the prosecutor committed misconduct during closing argument, requiring reversal. Specifically, he contends that the prosecutor misstated the law regarding "actual physical control" of a vehicle, improperly appealed to the jury's passions and sense of duty, and engaged in vouching.

**¶9**         Prosecutorial misconduct is defined as conduct not merely the result of legal error, negligence, mistake, or insignificant impropriety, but conduct that, taken as a whole, amounts to intentional conduct that the prosecutor knows to be improper and prejudicial. *State v. Martinez*, 221 Ariz. 383, 393, ¶ 36, 212 P.3d 75, 85 (App. 2009) (citation omitted). "To prevail on a claim of prosecutorial misconduct a defendant must demonstrate that the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal citations and quotation marks omitted). Thus, even improper comments by a prosecutor will not warrant reversal of a defendant's convictions unless it is shown that there is a "reasonable likelihood" that the "misconduct could have affected the jury's verdict." *State v. Newell*, 212 Ariz. 389, 403, ¶ 67, 132 P.3d 833, 847 (2006) (internal citations and quotation marks omitted).

---

[2] We cite the current versions of statutes unless otherwise noted.

¶10       In this case, the prosecutor argued during his closing argument that Cahill was in actual physical control of his car, in large part, because he was behind the wheel of the car with its engine running:

> And some people, to be honest with you, don't agree with that. They don't agree with, well — well, their opinion is, well, in order for someone to get a DUI, an officer should testify or an officer should have to see that person driving a car. And that's not what the law actually requires. What the law requires is evidence of actual physical control.
>
> And if you think about it, I mean, it makes sense. [1] *We don't want people behind the wheel with engines running of vehicles who are under the influence of alcohol or drugs. We don't want that, and so actual physical control is prohibited if you are —*
>
> [Defense counsel]: Objection, Your Honor, misstating the law.
>
> THE COURT: Overruled.
>
> [Prosecutor]: So let's talk about the instruction.
>
> In determining whether the defendant was in actual physical control, you should consider the totality of the circumstances. It's important to note that these are not elements of an offense like these are. These are elements of the offense that the State is required to prove. These 12 — this list . . . is not required to prove each and every one of them beyond a reasonable doubt. These are for your consideration to determine whether the defendant was in actual physical control of the vehicle.
>
> You'll notice that they are in no specific order, but [2] *it just so happens that the two most important ones, clearly the most important ones, are at the top; whether the vehicle was running and whether the ignition was on.* Those are critical, because obviously a person with an engine running to a vehicle, whether it's in park or not, if they're under the influence, they do pose a real danger to themselves or others. [3] *At any point in time they could wake up, you know, and just automatically kind of grab the — either grab the steering wheel or the gear shift, move that car out of park and God knows what can happen.*
>
> Whether the person was awake or asleep, the person's position in the vehicle. Of course he was in the driver's seat

4

with his head tilted against the window, which was rolled up. The time of the day. It's early in the morning obviously. The weather conditions and whether the heater or air conditioner was on. Also, any explanation of the circumstances shown by the evidence.

What was the explanation given by the defendant himself? That he drove the car in there and he fell asleep. Drove the car in there at 5 a.m., fell asleep, and the officer testified, he was pretty surprised to hear it was nearly 7 a.m. when he got woken up.

So we submit to you — we don't have to prove every single one of these elements, but [4] *we submit to you that this is textbook, textbook actual physical control. That is exactly what the statute was meant to prevent. Someone sleeping behind the wheel, whether it's in a parking lot or on the road, that is what the statute is meant to prevent.*

(Emphasis added to reflect the statements being challenged on appeal.)

¶11        Cahill only objected to the prosecutor's first alleged misstatement of the law — "We don't want people behind the wheel with engines running of vehicles who are under the influence of alcohol or drugs. We don't want that, and so actual physical control is prohibited . . . ." We review whether the court abused its discretion by overruling the objection. *See State v. Benson*, 232 Ariz. 452, 463, ¶ 44, 307 P.3d 19, 30 (2013). We review the other challenged statements for fundamental error because Cahill did not object to those statements. *State v. Roque*, 213 Ariz. 193, 228, ¶ 154, 141 P.3d 368, 403 (2006) (when a defendant raises an instance of alleged prosecutorial misconduct for the first time on appeal, we review for fundamental error only). "Fundamental error" is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005) (citation omitted). We also review the arguments with the appreciation that the jurors had the jury instructions as the court was reading them out loud, and one of the first instructions stated the following: "Lawyers comments are not evidence. . . . What the lawyers say is not evidence, but it may help you to understand the law and the evidence. You are to determine what the facts in the case are from the

evidence produced in court."[3]   And in the absence of evidence to the contrary, we presume the jury followed the court's instructions.  *State v. Ramirez*, 178 Ariz. 116, 127, 871 P.2d 237, 248 (1994).

¶12        Cahill first argues that the prosecutor improperly misstated the law regarding "actual physical control" of a vehicle in the first two challenged statements:

> We don't want people behind the wheel with engines running of vehicles who are under the influence of alcohol or drugs. We don't want that, and so actual physical control is prohibited if you are —
>
> . . .
>
> it just so happens that the two most important ones, clearly the most important ones, are at the top; whether the vehicle was running and whether the ignition was on.

Specifically, Cahill argues that the prosecutor's statements prioritized two factors (whether the vehicle was running and whether the ignition was on) above others when evaluating whether he was in actual physical control. We disagree.

¶13        When read in the context of the complete argument, the prosecutor's argument did not misstate the law.  For example, during his closing, the prosecutor referred to the actual-physical-control instruction and stated: (1) the "totality of the circumstances" should be considered in determining "actual physical control"; (2) all the items listed in the instruction were for the jury's consideration in determining whether Cahill was in actual physical control of the vehicle; and (3) the items were "in no specific order."  And the prosecutor explained that the fact that the car was running and the key was in the ignition were the most important factors because a person in that situation "pose[s] a real danger to themselves or others."  The argument tracked the portion of the jury instruction,[4] which had been given to and read before the closing arguments, requiring the jury to determine whether the circumstances established that Cahill's "current

---

[3] And the court reiterated just before arguments began that "what [the lawyers] tell you in their closing arguments is not evidence."

[4] The court distributed a copy of the final jury instructions to each juror so that the jury could follow the instructions while the court was reading them out loud.  Ariz. R. Crim. P. 21.3(d).

or imminent control of the vehicle presented a real danger to himself or others at the time alleged."

**¶14** Because of the context of the argument, the prosecutor did not misstate the law, and the court did not abuse its discretion by overruling the objection. *See Benson*, 232 Ariz. at 463, ¶¶ 42–44, 307 P.3d at 30.

**¶15** Cahill also challenges on appeal the prosecutor's argument about the most important factors about actual physical control. Again, in the context of the total argument, the statement was not error, much less fundamental error. Additionally, Cahill's lawyer reminded the jurors that whether Cahill was using the car as a shelter with its air conditioning, or whether he was about to drive, poses an interesting question that the jury had to resolve. Consequently, the prosecutor's statement about the most important factors of actual physical control did not improperly misstate the law. *See Boyde v. California*, 494 U.S. 370, 384 (1990) (rejecting contention that prosecutor's closing argument "reinforced an impermissible interpretation" of the relevant law, noting that "arguments of counsel generally carry less weight with a jury than do instructions from the court" and such arguments "must be judged in the context in which they are made"); *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations"); *Benson*, 232 Ariz. at 463, ¶¶ 42–44, 307 P.3d at 30 (concluding that when viewed in context, the prosecutor did not misstate the law); *State v. Jones*, 197 Ariz. 290, 305, ¶ 37, 4 P.3d 345, 360 (2000) (Prosecutors have considerable latitude in presenting their closing arguments to the jury.).

**¶16** Cahill also argues that the prosecutor improperly appealed to the jury's passions and sense of duty in the following statement:

> At any point in time they could wake up, you know, and just automatically kind of grab the — either grab the steering wheel or the gear shift, move that car out of park and God knows what can happen.

Cahill asserts that the statement was impermissible because it appealed to the jury's sense of duty to protect society and encouraged the jurors "to consider 'what can happen' in the hypothetical possibility that a person awakes and moves the car."

¶17        However, the argument was consistent with the actual-physical-control instruction, which required the jurors to determine "whether the defendant's current or imminent control of the vehicle presented a real danger to himself or others at the time alleged." Moreover, the statement was not improper even if the prosecutor intended to invoke the jury's sense of duty to protect society against drunk driving. *See State v. Herrera*, 174 Ariz. 387, 396–97, 850 P.2d 100, 109–10 (1993) (concluding that "prosecutor's statements about justice and protecting society" were not improper); *State v. Sullivan*, 130 Ariz. 213, 219, 635 P.2d 501, 507 (1981) ("[A]rguments referring to the prevalence of crime, the duty of the jury, and the efforts of the police in combatting crime are not improper."); *see also State v. Walker*, 181 Ariz. 475, 483, 891 P.2d 942, 950 (App. 1995).

¶18        Finally, Cahill argues that the prosecutor engaged in vouching by making improper references to "cases and laws" not presented to the jury in the following statement:

> [W]e submit to you that this is textbook, textbook actual physical control. That is exactly what the statute was meant to prevent. Someone sleeping behind the wheel, whether it's in a parking lot or on the road, that is what the statute is meant to prevent.

"Prosecutorial vouching" occurs (1) when "the prosecutor places the prestige of the government behind its evidence" and (2) "where the prosecutor suggests that information not presented to the jury supports the evidence." *State v. Martinez*, 230 Ariz. 208, 215, ¶ 29, 282 P.3d 409, 416 (2012) (internal citation and quotation marks omitted). Cahill contends that because the jury did not receive evidence regarding the legislative intent behind the actual physical control law nor any "textbooks," the prosecutor's statement improperly suggested that information not presented to the jury supported the State's argument.

¶19        The prosecutor's argument was not referring to any specific prior cases or actual textbooks, but rather, after discussing the instruction of actual physical control and relevant evidence, was arguing that Cahill was exercising actual physical control of his car by sleeping in it while it was running. As a result, the prosecutor's use of the colloquial phrase "textbook case" was not improper. *See State v. Fouse,* 319 P.3d 778, 787, ¶ 33 (Utah App. 2014) (noting that "colloquial, vigorous, and colorful comments often fall within the wide latitude permitted counsel in presenting closing arguments to the jury") (internal citations and quotation marks omitted); *cf. State v. Gonzales*, 105 Ariz. 434, 436-37, 466 P.2d 388, 390-91 (1970) ("Our law

permits trial counsel wide latitude in presenting closing arguments to the jury.").  Therefore, the prosecutor's statement, while colloquial, did not introduce or comment on evidence that was not in the record, and, as a result, did not constitute impermissible vouching, nor was it misconduct, much less fundamental error leading to prejudice.

## CONCLUSION

**¶20**        For the foregoing reasons, we affirm Cahill's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: RT