# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5042-16T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS R. PACHECO, a/k/a
JOSE M. RIVERA, LUIS
ROSARIO, and LUIS
ROSARIO PACHECO,

     Defendant-Appellant.

_____

Submitted March 20, 2019 – Decided April 11, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-03-0698.

Joseph E. Krakora, Public Defender, attorney for appellant (Margaret McLane, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Luis Pacheco appeals from an August 1, 2017 amended judgment of conviction for attempted murder, robbery, endangering the welfare of a child, and criminal restraint. He argues for the first time on appeal that the judge erroneously failed to charge lesser-included offenses and the prosecutor argued improperly in summation. The judge sentenced defendant to forty years in prison subject to the eighty-five percent parole disqualifier required by the No Early Release Act, N.J.S.A. 2C:43-7.2, for attempted murder, and a consecutive five-year custodial sentence with a two and one-half year parole disqualifier for endangering the welfare of a child. We affirm, but remand for resentencing.

A jury convicted defendant of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a); first-degree robbery, N.J.S.A. 2C:15(a)(1); third-degree terroristic threats, N.J.S.A. 2C:12-3(b); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and third-degree criminal restraint, N.J.S.A. 2C:13-2(a). He was acquitted of first-degree kidnapping.

The record reveals the following facts. On August 22, 2014, H.D.[1] was working the 2:00 p.m. to 8:00 p.m. shift at a gold-buying and jewelry store in Newark. She was also babysitting her grandson, who was nearly two-years-old.

Sometime before 7:00 p.m., as H.D. turned around to pick up her grandson, she was pushed from the back "with a lot of force" onto the floor. Once on the ground, a man grabbed H.D. by the shirt and hair and dragged her further into the second room of the store. He then struck her twice with a closed fist on the left side of her face. H.D. thought she was "going to be killed" and started screaming for help, prompting defendant to drag H.D. by her hair into the third room of the store.

In the third room, H.D. could not see her grandson, but heard him screaming. Defendant, still holding H.D. by her hair, dropped her on the floor in the middle of the room and then grabbed H.D. by the neck with his hands, using "his whole strength." H.D. tried to remove defendant's hands from her neck, but was unsuccessful. She could also no longer call for help because she could not breathe properly.

While defendant choked H.D., he told her "to die, to die already." When H.D. did not die, defendant removed his hands from her neck and started

<hr>

[1] We use initials to protect the privacy of the victim.

A-5042-16T4

punching her again "very hard" with a closed fist on both sides of her face. After striking H.D., defendant began choking her again with "[a] lot of strength" to the point that she had difficulty breathing.

H.D. then grabbed her grandson's "metal toy car" from the floor and hit defendant in the face with it. Defendant continued to choke H.D.. H.D. struggled with defendant, who then stood up and kicked her on the left side of the face. At that point, H.D. saw her screaming and crying grandson standing in the doorway.

After he kicked H.D., defendant bent over, grabbed her with his hands by the neck, and said: "Die, die." Defendant then stood behind H.D., and put her in a chokehold. H.D. struggled, telling defendant: "Please don't kill me. Look at . . . my boy that is right there . . . . Take anything you want, but don't kill me. I have children."

Defendant stopped choking H.D. and said: "I'm going to let go of you . . . [b]ut do not move because I will kill you." After defendant walked into another room, H.D. grabbed her grandson to stop him from crying. Defendant reentered the third room and said, "I told you not to move or . . . I'll kill you." Defendant then took H.D.'s chain, bracelets and wedding band before walking into the other room again, where he stole $500 from a cabinet drawer.

A-5042-16T4

A Newark officer arrived at the store at 7:20 p.m. He saw H.D., who looked "badly beaten." She provided a description of defendant, who had spoken to her in Spanish. H.D. was transported to the hospital, where she was diagnosed with a broken rib, broken nose and "broken ear." She had bruising and swelling on her face, eyes, and neck.

At 7:40 p.m., Detectives Debbie Teixeira and Gerardo Rodriguez arrived at the store. The detectives walked through the store, directed another detective to photograph the crime scene, and drove to the hospital to speak with H.D. H.D. told the detectives that during the attack she struck defendant with a toy car and scratched him. The detectives did not take fingernail scrapings from H.D.

Detective Rodriguez found the toy car in the third room and discovered a glass pipe located six inches from the toy car. No pictures were taken of these two items at the crime scene. Defendant's DNA was found on the pipe.

Detective Rodriguez did not see any security cameras and was not told about any cameras located outside of the store. Detective Teixeira observed City of Newark cameras on the corner; however, no one was available from the City to review the cameras. The police never recovered any footage from the cameras.

5

Six days later, on August 28, 2014, H.D. encountered defendant's brother, Jose Pacheco, while she was working at the store. Jose saw H.D.'s injuries and began to cry. He gave a statement to the police that defendant attacked H.D. and robbed the store on August 22, 2014. Jose told officers that he was home on that date when defendant arrived "in a desperate state" with money and jewelry in his possession and a scratched face. Defendant asked Jose "to get him a taxi, because he was leaving because he had . . . committed a . . . robbery or something like that."

Defendant raises the following issues on appeal:

> POINT I: THE ATTEMPTED MURDER CONVICTION MUST BE REVERSED BECAUSE THE JURY WAS NOT INSTRUCTED ON ANY LESSER-INCLUDED OFFENSES. (NOT RAISED BELOW)
>
> POINT II: ASKING THE JURY TO NOT "HOLD THE VICTIM ACCOUNTABLE" FOR THE POLICE OFFICERS' FAILURE TO FULLY INVESTIGATE WAS PROSECUTORIAL MISCONDUCT THAT DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL. (NOT RAISED BELOW)
>
> POINT III: DEFENDANT'S FORTY-FIVE YEAR SENTENCE IS MANIFESTLY EXCESSIVE.

I.

Defendant contends the trial court committed plain error in failing to charge second and third-degree aggravated assault as lesser-included offenses

6

of attempted murder. Based on the record and applicable case law, the trial court correctly instructed the jury.

Generally, "a trial court has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense." State v. Jenkins, 178 N.J . 347, 361 (2004). However, "courts are required to instruct the jury on lesser-included offenses only if counsel requests such a charge and there is a rational basis in the record for doing so or, in the absence of a request, if the record clearly indicates a charge is warranted." State v. Denofa, 187 N.J. 24, 42 (2006); see also State v. Thomas, 187 N.J. 119, 131-32 (2006) (determining the court must analyze "whether the evidence presents a rational basis on which the jury could acquit the defendant of the greater charge and convict the defendant of the lesser") (quoting State v. Brent, 137 N.J. 107, 117 (1994)).

"[W]hen the defendant fails to ask for a charge on lesser-included offenses, the court is not obliged to sift meticulously through the record in search of any combination of facts supporting a lesser-included charge." Denofa, 187 N.J. at 42. The court is only obligated to give a lesser-included offense instruction sua sponte "if the record clearly indicates a lesser-included charge -

- that is, if the evidence is jumping off the page . . . ." Ibid.; see also Thomas, 187 N.J. at 132 (finding that a "court ha[s] no duty to instruct the jury sua sponte on [an included offense charge if] the evidence [does] not clearly indicate or warrant such a charge") (alterations in original) (quoting State v. Savage, 172 N.J. 374, 401 (2002)). Because defendant did not raise the issue during trial, we review for plain error. See Thomas, 187 N.J. at 133; R. 1:7-2.

While aggravated assault is a lesser-included offense of attempted murder, State v. Russo, 243 N.J. Super. 383, 411 (App. Div. 1990), the record lacks a "clear indicat[ion]" warranting instruction on second or third-degree aggravated assault, see Denofa, 187 N.J. at 42.

A defendant "is guilty of attempted murder only if he . . . actually intended the result, namely, death, to occur." State v. Rhett, 127 N.J. 3, 7 (1992). Here, defendant's statements that he wanted the victim to die, coupled with testimony that he attempted to strangle her with full force, was sufficient for the trial court to limit its charge to attempted murder because evidence of aggravated assault did not "jump[ ] off the page." See Denofa, 187 N.J. at 42. H.D. testified that defendant told her "to die, to die already" and "[d]ie, die," while choking her twice to the point that she had difficulty breathing. He also repeatedly punched and kicked her. Defendant's words, combined with the prolonged period of

8

intense choking, demonstrated defendant intended to kill H.D. during their encounter. The trial court was not required to instruct the jury on aggravated assault absent a request from defendant.

## II.

During summation, defense counsel argued the Newark police did not use proper investigation techniques, raising reasonable doubt about defendant's guilt. In response, the prosecutor stated:

> The police, they didn't do everything they should have done. That's no secret in this case, but ladies and gentlemen, I'm asking you not to hold the victim accountable for what the police did or didn't do in this case.
>
> And here's the reason why: After hearing all the evidence this isn't a case about what the police did or didn't do. You don't need a video to find out who committed these heinous crimes. You don't need DNA scrapings off the victim's fingernails to find out who did these heinous crimes. And that's because the defendant, through his actions, did that for you. He identified himself. When he left that pipe behind with his DNA and when he confided in his brother that he was the one who robbed the victim on Broad Street on August 22, 2014.

Defense counsel did not object to these remarks.

Defendant contends for the first time on appeal that the prosecutor's remark during summation deprived defendant of his right to a fair trial. "The

9

failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made." State v. Frost, 158 N.J. 76, 84 (1999). Because defense counsel did not object to the prosecutor's remark in his summation, we consider defendant's argument under the plain error standard of review. State v. Daniels, 182 N.J. 80, 95 (2004). The plain error standard requires us to determine whether the remark was improper and, if so, whether it was "clearly capable of producing an unjust result." R. 2:10–2.

"[P]rosecutors are afforded considerable leeway in their closing arguments" and are "expected to make vigorous and forceful closing arguments . . . ." State v. Smith, 167 N.J. 158, 177 (2004). A new trial will be required, however, if the prosecutor's improper comment was "so egregious that it deprived the defendant of a fair trial." Id. at 181 (quoting Frost, 158 N.J. at 83).

When reviewing a prosecutor's summation, the court must examine questionable comments "in the context of the entire trial." State v. Morton, 155 N.J. 383, 419 (1998). This necessarily includes statements made by the defense counsel, such as their "opening salvo," and prosecutorial comments attempting to "right the scale" in response. State v. Engel, 249 N.J. Super. 336, 379 (App. Div. 1991) (quoting United States v. Young, 470 U.S. 1, 12-13 (1985)). To reverse, the prosecutor's summation must have been "clearly and unmistakably

improper," and must have "substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Wakefield, 190 N.J. 397, 438 (2007) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

Defendant argues the prosecutor's statement was a "call to arms." It is improper for a prosecutor to make a statement that is "nothing less than a call to arms" because it promotes a sense of partisanship incompatible with the role of the jury. State v. Goode, 278 N.J. Super. 85, 89 (App. Div. 1994) (quoting State v. Holmes, 255 N.J. Super. 248, 251–52 (App. Div. 1992)). In Goode, the prosecutor stated during his opening statement that jurors had the opportunity to "make a difference" in their community by convicting the defendant. Ibid. In summation, the prosecutor noted, "I said to you you're going to be able to make a difference in your community. This is one situation where you can finally do something and say yes, drugs exist. I hate them . . . But this time I can do something. I can make a difference." Id. at 90. We determined the "repeated improper comments, which ran as a thread through th[e] trial, from opening to summation, r[o]se to the level of plain error . . . ." Id. at 92; see also State v. Neal, 361 N.J. Super. 522, 537 (App. Div. 2003) (finding prosecutorial misconduct where the prosecutor repeatedly "asked the jury to hold [the]

11

defendant accountable for his betrayal of the children of Asbury Park"); State v.

Buscham, 360 N.J. Super. 346, 364–65 (App. Div. 2003) (criticizing

prosecutor's remarks that it was the duty of adults, including the jurors, to protect

the child victim).

The prosecutor here made a single comment, in passing, responding to the

defense summation. It did not rise to the level of impropriety found in Goode,

Neal, or Buscham. The prosecutor's statement, while inappropriate, was

responsive to the defense argument. It was fleeting and without the capacity to

deprive defendant of a fair trial.

### III.

During defendant's sentencing, the trial court first addressed the State's

motion to impose a discretionary extended term by reviewing defendant's prior

offenses. At the time of the incident, defendant was serving a five-year

probationary sentence for fourth-degree resisting arrest and a five-year

probationary sentence for second-degree robbery. The trial court also stated

defendant was found guilty of robbery on two other occasions and burglary on

four other occasions between 2004 and 2013. Consequently, the trial court

granted the State's motion.

12

Next, the trial court analyzed aggravating and mitigating sentencing factors, and did not find any mitigating factors. The court found aggravating factors one, three, six, and nine. N.J.S.A. 2C:44–1(a)(1), (3), (6), (9).

We review sentencing decisions for an abuse of discretion. State v. Blackmon, 202 N.J. 283, 297 (2010). We do "not substitute [our] judgment for that of the sentencing court." State v. Fuentes, 217 N.J. 57, 70 (2014). We must reverse, however, if the sentencing guidelines were violated. Ibid.

The trial court found aggravating factor one because of "This wasn't just a robbery . . . [defendant] did it in front of this woman's grandchild who sat there helpless." On appeal, defendant argues it was improper for the trial court to consider the harm he caused to the young child because defendant was convicted of third-degree endangering of a child. We agree the trial court improperly "double-counted" when applying aggravating factor one.

Aggravating factor one requires a court to consider "[t]he nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner . . . ." N.J.S.A. 2C:44–1(a)(1). When determining whether this factor applies, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which

13

defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (quoting State v. Hodge, 95 N.J. 369, 378–79 (1984)). The court may consider "aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior." Fuentes, 217 N.J. at 75 (alteration in original) (quoting State v. Henry, 418 N.J. Super. 481, 493 (Law Div. 2010)).

In determining whether a defendant's conduct was "'heinous, cruel, or depraved,' a sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." Id. at 74–75; see also State v. Yarbough, 100 N.J. 627, 641 (1985). Double-counting occurs when the "established elements of a crime for which a defendant is being sentenced . . . [are] considered as aggravating circumstances in determining that sentence." State v. Kromphold, 162 N.J. 345, 353 (2000).

Defendant was convicted of third-degree endangering the welfare of a child. Under N.J.S.A. 2C:24-4(a)(2), abuse of a child consists of "the performing of any indecent, immoral or unlawful act or deed in the presence of the child that may tend to debauch or endanger or degrade the morals of the child." In finding aggravating factor one applied to defendant, the trial court emphasized that the robbery and attack on H.D. occurred in the child's presence.

14                                                                      A-5042-16T4

Because performing the unlawful acts in the presence of a child is an element of third-degree endangering the welfare of a child, the trial court "double-counted" in finding aggravating factor one.  See Kromphold, 162 N.J. at 353.

Defendant also argues that the court did not properly explain why it imposed consecutive sentences for attempted murder and endangering a child. The trial court must state its reasons for the sentence imposed.  R. 3:21-4(e). When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence . . . ."  N.J.S.A. 2C:44-5(a).  Our Supreme Court provided the following guidelines for a court in imposing a concurrent or consecutive sentence:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
>> (a) the crimes and their objectives were predominantly independent of each other;
>>
>> (b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense;

[Yarbough, 100 N.J. at 643–44.]

"When a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 129 (2011). "[I]f the court does not explain why consecutive sentences are warranted, a remand is ordinarily needed for the judge to place reasons on the record." Ibid.

The trial court briefly mentioned Yarbough factor one during its discussion, stating "there are no free crimes," but failed to address the remaining Yarbough factors. This analysis is insufficient, and a remand is necessary to conduct a proper Yarbough analysis and eliminate aggravating factor one from consideration.

16

The court should consider the real-time consequence of a parole disqualifier. State v. Lee, 411 N.J. Super. 349, 351 (App. Div. 2010); see also State v. Marinez, 370 N.J. Super. 49, 57-58 (App. Div. 2004) (stating that sentencing courts must consider the real-time consequences that NERA will have on a sentence). Defendant, age thirty-three at sentencing, would be more than sixty-six years old when he is first eligible for parole under the current sentence. We affirm defendant's convictions, but remand for a full resentencing hearing.

Convictions affirmed. Remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5042-16T4