174 N.J. Super. 195 (1980)
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WAYNE DEBELLIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 12, 1980.
Decided May 23, 1980.
*197 Before Judges BISCHOFF, BOTTER and MORTON I. GREENBERG.
Stanley C. Van Ness, Public Defender, attorney for appellant (Maurice J. Molyneaux, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Degnan, Attorney General, attorney for respondent (Frederick S. Cohen, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
The state grand jury, in a 33-count indictment charged defendant Wayne DeBellis and James Joyce, Morris Hacker and Miles Burke with conspiracy, embracery, perjury, obstruction of justice and misconduct in office. The indictments were returned as a result of an investigation of circumstances surrounding an earlier trial at which Joyce had been acquitted. All of the defendants were not charged in each count. The trial of Hacker was severed since he was hospitalized. The case was tried against the remaining three defendants. Jury selection started June 15, 1978. The first testimony was heard by the jury on June 19, 1978. The evidential portion of the trial lasted until July 24, 1978. Verdicts were returned July 27, 1978. Burke was found not guilty of all charges. DeBellis was convicted of conspiracy, two counts of misconduct in office, obstruction of justice and seven counts of perjury. N.J.S.A. 2A:98-1(h); N.J.S.A. 2A:98-2; N.J.S.A. 2A:85-1; N.J.S.A. 2A:85 14; N.J.S.A. 2A:131-1. He was found not guilty of embracery and two counts of perjury. Joyce was found guilty of three counts of embracery but was found not guilty of conspiracy, two additional counts of embracery, aiding and abetting misconduct in office, two counts of obstruction of justice and five counts of perjury.
*198 DeBellis was sentenced to concurrent terms of not less than two years or more than three years on the counts for conspiracy, misconduct in office (two counts) and obstruction of justice. He was also fined $1,000 on each count, for a total of $4,000. On each of the perjury charges he was sentenced to a term of not less than four years or more than six years. The perjury sentences were made concurrent with each other but consecutive to the other sentences. There were no fines imposed on the perjury counts.
DeBellis filed a notice of appeal from the judgment of conviction against him. The appeal was perfected with an appropriate brief, appendix and transcripts filed. We are advised that he subsequently died. But nevertheless we decide the appeal except with respect to an issue of merger of four counts of perjury. R. 2:3-2; Newark v. Pulverman, 12 N.J. 105, 115-116 (1953). Since no application has been made for a substitution of parties we will consider the appeal as though still being prosecuted by DeBellis.
DeBellis asserts five grounds for reversal:
The trial court was in error in denying the closure motion made in behalf of all the parties to the litigation to exclude the news media during the pretrial evidentiary hearing.
The trial court committed reversible error in sending the transcripts of the sound recordings into the jury room over objection of defense counsel.
Sending the trial court's skeleton outline of the indictment into the jury room accompanied by 72 overt acts was inherently dangerous and outweighed any benefit the jury might have derived from its use during deliberation.
The trial judge's admonition to the jury, in advance of any such request, relevant to reading of a witness' testimony had a chilling effect on their deliberations. Counts 25, 26, 32 and 33 of the indictment were nothing more than a single transaction motivated by one criminal episode which was fractionalized by the state in an effort to enhance defendant's punishment.
We see no error in the trial court's reported decision, State v. Joyce, 160 N.J. Super. 419 (Law Div. 1978), refusing to exclude on motion of all parties the press from a pretrial evidentiary hearing held pursuant to State v. Driver, 38 N.J. 255 *199 (1969), to determine the audibility of recordings of conversations and the accuracy of transcripts made from them. Certainly the press ought rarely if ever to be excluded from judicial proceedings. State v. Allen, 73 N.J. 132 (1977). While DeBellis argues that "a substantial likelihood existed that an open hearing would prejudice the defendant's right to a fair trial," in fact the selection of the jury showed that media publicity did not preclude the court from impaneling an impartial jury.
There was no error in admission into the jury room of transcripts of tape recordings of conversations obtained by the State. The trial judge carefully explained that he was allowing the transcripts into the jury room because as a result of his review he was certain that they were reasonably accurate; witnesses testified they had read the transcripts and they were accurate; defendants did not deny the accuracy; the jury had already seen the transcripts; the jury would find it difficult without the transcripts to know which recordings they wanted to hear; the judge was afraid that he had unintentionally deceived defendants into believing that the transcripts would go into evidence, and the transcripts would help the jury understand the evidence in this lengthy trial. The judge indicated that he would give a limiting instruction to the jury that the transcripts were only a guide to the recordings and that the recordings were the primary evidence. In fact, such an instruction was given. The jury was told that the transcripts were not binding and that they should be disregarded if not accurate.
It has been recognized in New Jersey that a transcript may be used as an aid for understanding a tape recording. State v. Zicarelli, 122 N.J. Super. 225, 239-240 (App.Div. 1973), certif. den. 63 N.J. 252 (1973), cert. den. 414 U.S. 875, 94 S.Ct. 71, 38 L.Ed.2d 120 (1973). We cannot say that the very careful exercise of discretion by the trial judge was erroneous. United States v. West, 574 F.2d 1131, 1138 (4 Cir.1978); United States v. Dorn, 561 F.2d 1252, 1257 (7 Cir.1977). It is evident that the ultimate rationale for admission of the tapes was that the jury would *200 receive accurate information of material assistance to it in its fact finding process.
We see no error in the trial judge's sending into the jury room a verdict sheet summarizing the elements of each charge and requiring the jury to return a verdict of guilty or not guilty to each count. The indictment was 76 pages long and included 33 counts. The case was being tried against three defendants. Evidence was received for over one month. Certainly, the return of a verdict from a verdict sheet could hardly be faulted under these circumstances. An attempt to return a verdict without some written form could have been very confusing. Defendant admits, as he must, that the judge had discretion to send the indictment into the jury room. State v. Chauncey, 112 N.J. Super. 433 (App.Div. 1970). The verdict sheet was a reasonable substitute for the indictment. It called for findings of guilty or not guilty and did not ask special interrogatories. State v. Simon, 79 N.J. 191 (1979). The trial judge told the jury that the indictment was only a charge and that neither it nor the verdict sheet was evidence. The jury was told that the verdict sheet was only an outline of the charges. The jury was given a comprehensive oral charge and there is no suggestion that the charge was insufficient. While DeBellis asserts that the verdict sheet would encourage the jury to ignore the oral charge, we see no basis for such a conclusion.
The judge did not err in indicating that he might refuse a request by the jury to read back voluminous testimony of a witness. What the judge actually said was that if he was requested to have evidence read back, "I might have to instruct you that this is a matter in which you will have to rely upon your own combined recollection." The context of this statement was that the jury had asked to have testimony of a brief witness read. The judge agreed to this request but naturally was concerned about possibly more lengthy testimony. We do not see how delivery of this caveat could have been error since it did *201 not foreclose the possibility of such testimony being read back. Further, though such requests are liberally dealt with, the judge would have had discretion to permit or refuse testimony to be read back had the jury requested it. State v. Wilkerson, 60 N.J. 452, 460 (1977). The judge did nothing more than advise the jury of what its discretionary power would be if there were further requests to have testimony read back.
Defendant finally urges that counts 25, 26, 32 and 33 of the indictment be merged into a single conviction. The essence of the argument is that the indictment fractionalizes a single continuing incident into four separate offenses since testimony about only one matter was involved. On these convictions defendant received concurrent sentences of not less than four or more than six years, the sentences to be consecutive to other sentences imposed. Defendant was not fined on these counts. In view of his death we are unable to discern any reason to decide this question. We can conceive of no legal benefit or detriment that can flow from any decision that we might make. There are no fines which arguably could survive death. N.J.S.A. 2A:166-11; N.J.S.A. 2C:46-2. Merger, in essence, establishes a single crime for sentencing since it is unfair to punish a defendant twice for the same offense. State v. Best, 70 N.J. 56 (1976). Yet a defendant benefited by an order of merger may have violated more than one statute by his conduct. State v. Moran, 73 N.J. 79 (1977). The reason for permitting a criminal appeal to be prosecuted after death even in the absence of some continuing legal consequence of conviction is so the family of the decedent may erase the stigma of conviction. Newark v. Pulverman, supra. Since merger of the perjury counts will not advance that end by erasing the established fact of violation of the statute, but rather can go only to punishment, the argument is moot.
Insofar as the appeal requests a merger of counts 25, 26, 32 and 33 of the indictment, it is dismissed as moot. Otherwise the judgment of conviction is affirmed.