# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5901-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARCOS R. BLANDINO a/k/a
MARCOS RAFAEL BLANDINO,

    Defendant-Appellant.

_____

Submitted October 12, 2021 – Decided November 24, 2021

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-08-0553.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Erin M. Campbell, Assistant Prosecutor, on the brief).

PER CURIAM

Tried to a jury, defendant Marcos R. Blandino was convicted of forcibly entering a stranger's apartment in Hoboken around 6:00 p.m. on Sunday, April 23, 2017, and groping her against her will.  Following the jury's guilty verdict on third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a), as a lesser-included offense of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3) (counts one and two), and second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count three), defendant was sentenced to an aggregate fifteen-year prison term.  The trial judge imposed concurrent five-year prison terms on the sexual contact offenses to be served prior to a consecutive ten-year prison term on the burglary conviction.  Defendant's sentence on the burglary conviction, only, is subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

During the ten-day trial, the State presented the testimony of fourteen witnesses, including the victim, K.O. (Katrina),[1] and her two roommates, who found Katrina curled in a fetal position after the attack.  Surveillance video footage captured defendant's minivan traveling down Katrina's block as she

_____

[1]  We use initials to protect the privacy of the victim and pseudonyms for ease of reference.  See R. 1:38-3(c)(12).

walked toward her apartment building; Katrina entering the building; and defendant following moments later.

Katrina told the jury she did not observe defendant until he was standing next to her outside her apartment door. As she opened the door, defendant pushed Katrina into the apartment, causing her to fall to the floor. Defendant pulled down Katrina's pants, held her down, and touched her vagina with his finger and penis. Katrina kicked and screamed, and eventually defendant left.

According to the surveillance video, defendant exited the apartment building five minutes after he entered. Police reviewed the surveillance video and issued a "be on the lookout" (BOLO) advisory for defendant's minivan. The following Sunday, Hoboken police stopped defendant, while he was driving the minivan, which matched the BOLO description.

Defendant was not under arrest, but he waived his Miranda[2] rights and voluntarily agreed to give a statement to members of the Hudson County Prosecutor's Office (HCPO). Police told defendant they were investigating "something" that had occurred the previous week. Acknowledging he had been in Hoboken on April 23, defendant claimed he only made one stop at the "Hindu store," which he "always" patronized when his Lyft job brought him to the area.

---

[2] See Miranda v. Arizona, 384 U.S. 436 (1966).

A-5901-17

But shortly after defendant was shown photographs of his minivan from the surveillance video, defendant invoked his right to counsel and all questioning about the incident ceased.

At trial, the State introduced defendant's video-recorded statement, which was made in defendant's primary language of Spanish. Accordingly, the trial judge provided English transcripts to the jury as listening aids when the statement was played in open court. Because the transcripts were not admitted in evidence, the judge did not provide them to the jury during deliberations.

Defendant testified on his own behalf, denying Katrina's account. Instead, defendant claimed Katrina – about twenty years his junior and someone he had not previously met – invited him into her home and attempted to have sex with him. Defendant said he returned Katrina's kiss but froze when "she put her vagina in [his] face." He left soon thereafter.

Defendant now appeals, arguing:

POINT I

DEFENDANT'S CONVICTION FOR SECOND-DEGREE BURGLARY MUST BE REVERSED.

A. The Trial Court's Instructions to the Jury Directed a Verdict on an Element of Burglary and Thereby Improperly Relieved the State of its Constitutional Burden of Proving Guilt Beyond a Reasonable Doubt. (Not raised below)

4

B.  After the Jury Verdict the Trial Court Sua Sponte Should Have Exercised Its Discretion Pursuant to R[ule] 3:18-2 by Entering a Judgment of Acquittal.
(Not raised below)

## POINT II

DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL DUE TO THE COURT'S FAILURE TO PROPERLY WARN THE JURY TO DISREGARD DEFENDANT'S ASSERTION OF HIS RIGHT TO REMAIN SILENT.
(Not raised below)

## POINT III

[]DEFENDANT WAS DENIED THE RIGHT TO A FAIR TRIAL BECAUSE THE JURY CONSIDERED HIS PRIOR STATEMENT, WHICH WAS PLAYED IN OPEN COURT IN SPANISH WITH AN ENGLISH TRANSCRIPT, BUT THE ENGLISH TRANSLATION WAS NOT ADMITTED INTO EVIDENCE.
(Not raised below)

## POINT IV

THE SENTENCE OF THE MAXIMUM TERMS IN PRISON ON EACH COUNT AND RESULTING IN FIFTEEN YEARS IN PRISON WITH [AN] EIGHT AND ONE-HALF[-]YEAR[] PERIOD OF PAROLE INELIGIBILTY WAS EXCESSIVE BECAUSE THE COURT ERRED IN APPLYING AGGRAVATING SENTENCING FACTORS ONE AND TWO[, N.J.S.A. 2C:44-1(a)(1) and (2)].

For the reasons that follow, we affirm defendant's convictions and remand for resentencing.

I.

Initially, we consider the arguments asserted in point II. For the first time on appeal, defendant argues the trial judge committed reversible error by including the invocation of defendant's right to counsel when his statement to police was introduced in evidence. Acknowledging the final jury charge included a limiting instruction regarding defendant's invocation, he argues the instruction should have accompanied the offending statement when it was received in evidence. Because defendant neither objected to admission of the statement nor requested a cautionary instruction at trial, we review his newly-minted challenges through the prism of the plain error standard. R. 2:10-2.

Defendant invoked his right to counsel after police presented photographs from the surveillance video depicting his minivan outside Katrina's apartment building, and police told defendant the victim's description of her assailant was "precisely a description of [him]." At issue is the following excerpt of defendant's exchange with police:

> LIEUTENANT: []It's important that you provide an explanation here regarding what happened. It's the only thing I'm asking you sir. We already know what happened, so. I wish you can go back one week, years,

months, and we would be able to change many things, but we can't. We can't but already [sic] what happened, happened and we have to see forward, towards the future, okay and its important. The only thing that we ask you is that you say the truth that's all. Explain to me what happened; tell me.

DEFENDANT: For me to explain anything I would like to come with an attorney. I don't . . . I don't have the desire to explain anything that may have happened with him [sic] you can ask me what you want to ask me. Obviously, it's my vehicle; I was there because it's my vehicle. I don't know what that person may have said. I don't want to say anything.

At the conclusion of the court's final instructions to the jury, at request of the State, the judge issued a limiting instruction:

You've heard the defendant invoked his right to an attorney at the end of his statement to the prosecutor's office on April 30th. You also heard at the beginning of the statement the detective explained to him that he had a right to an attorney, the right to remain silent, and other rights.

These are his rights as guaranteed by the United States and New Jersey State Constitutions. You cannot draw any negative inference from the defendant's exercise of his constitutional rights.

In <u>State v. Feaster</u>, 156 N.J. 1, 73-77 (1998), our Supreme Court considered whether a jury should be permitted to hear the defendant invoke his right to silence. As a general principle, the Court held trial judges "should endeavor to excise any reference to a criminal defendant's invocation of his right

7

to counsel." Id. at 75. Nonetheless, the Court found permissible the admission of such statement where it "is essential to the complete presentation of the witness's testimony and its omission would be likely to mislead or confuse the jury." Id. at 76. In that situation, the trial court must give a cautionary instruction to guard against any impermissible inferences. Ibid.

However, "a trial court's failure to follow the Feaster stricture of excision or a cautionary instruction does not necessarily equate to reversible or plain error." State v. Sui Kam Tung, 460 N.J. Super. 75, 94 (App. Div.), certif. denied, 240 N.J. 249 (2019). As we explained in Tung:

> The Feaster Court found the error of failing to excise the reference or provide a cautionary instruction was harmless due to "the fleeting nature of the reference" in testimony, the fact that the prosecutor "did not comment on the matter during summation," and the trial judge's "emphatic instruction" that defendant's failure to testify could not be held against him, which "impart[ed] to the jury the respect to be accorded defendant's decision to remain silent."
>
> [Id. at 94 (quoting Feaster, 156 N.J. at 77).]

In the present matter, defendant's invocation demonstrated why the questioning ceased and, as such, was properly admitted at trial. The prosecutor neither elicited any testimony about defendant's invocation from the detective through whom the statement was introduced at trial, nor commented on

defendant's right during summation. Instead, the prosecutor urged the court to issue the curative instruction, albeit belatedly. See State v. Herbert, 457 N.J. Super. 490, 505-06 (App. Div. 2019) (citations omitted) (reiterating the principle that "a swift and firm instruction is better than a delayed one"). Thus, although not requested by defendant, the trial judge should have issued the limiting instruction when defendant's statement was played for the jury.

Nonetheless, we do not find plain error here. The exchange by defendant that terminated the interview was brief; the prosecutor did not comment on it during summation; defendant's attorney never objected; and the judge specifically instructed the jury to refrain from "draw[ing] any negative inference from the defendant's exercise of his constitutional rights." We presume the jury followed the trial judge's instructions. See State v. Vega-Larregui, 246 N.J. 94, 126 (2021).

II.

For the first time on appeal in point III, defendant asserts the trial judge sua sponte failed to admit in evidence the English-language translation of his statement to police, which was conducted entirely in Spanish and played for the jury in that form. Defendant argues because the jury "was never presented with evidence of defendant's statement that was in a form that the jury could

9

understand," the jury was unable to consider his "denial of culpability." We are unpersuaded.

Defendant's statement was admitted in evidence through the testimony of HCPO Detective Paola Bolivar – one of two Spanish-speaking officers, who questioned defendant. Prior to playing the video for the jury, Bolivar testified she had previously reviewed the English-language transcript of defendant's statement and that it was "accurate in terms of substance." The transcript was marked for identification and copies were distributed to the jury. The prosecutor then instructed the detective to "follow along and let [everyone] know when to turn the page."

Prior to the distribution of the transcripts to the jurors, defense counsel expressly indicated she had "no objection." The prosecutor then confirmed in open court that the transcripts would "be used as an aid for the jury." Later, at the conclusion of the judge's final instructions and before the evidence was provided to the jury, the prosecutor advised the judge that counsel agreed "the transcript will . . . not go to the jury room. We'll hold that if they want to watch the [video]." The judge concurred, stating: "It's not evidence."

Our court rules generally permit members of the jury to "take into the jury room the exhibits received in evidence." R. 1:8-8. Thus, exhibits that are

10

marked for identification but not moved in evidence ordinarily should not be provided to the jury. We have long recognized "a transcript may be used as an aid for understanding a tape recording." State v. DeBellis, 174 N.J. Super. 195, 199 (App. Div. 1980); see also State v. Zicarelli, 122 N.J. Super. 225, 239-40 (App. Div. 1973). The decision whether to provide the transcript to the jurors during their deliberations lies within the trial court's sound discretion. See DeBellis, 174 N.J. Super. at 199.

In DeBellis, we discerned no error in the trial court's decision to provide transcripts of the defendant's recorded statements, where among other factors, witnesses testified to their accuracy; the defendants did not deny their accuracy; the judge issued a limiting instruction on the use of the transcript; and "the jury had already seen the transcripts." Ibid. Those factors similarly apply here, especially where defendant's statement was made in Spanish and the translated transcript assisted the jurors in comprehending the statement.

Notably, however, in DeBellis, the trial court also believed it "had unintentionally deceived [the] defendants into believing that the transcripts would go into evidence." Ibid. Conversely, in the present matter, the parties agreed that the transcripts would not be provided to the jurors during

deliberations unless they asked to replay the video-recorded statement.[3] Because the jury was provided with an English transcription of defendant's statement when the video recording was played during trial, the jury was presented with defendant's denial of fault, which they again heard when he testified. Even if the judge abused his discretion by not providing the transcripts to the jury during their deliberations, that decision was not "clearly capable of producing an unjust result." R. 2:10-2.

## III.

## A.

Little need be said regarding the belated contentions raised in point I, challenging the trial court's instructions on burglary and the sufficiency of the evidence supporting the jury's verdict on that charge. Defendant initially asserts error in the following portion of the burglary instruction:

> Purpose, with purpose and similar words have the same meaning. In other words, in order for you to find the defendant acted purposely, the State must prove beyond a reasonable doubt that it was his conscious object at the time he unlawfully entered . . . the premises to commit an unlawful act.

---

[3] We presume playback of the video-recorded statement would have proceeded in open court. See State v. A.R., 213 N.J. 542, 546 (2013).

A-5901-17

Defendant claims the emphasized language advised the jury "to assume" he was not privileged or licensed to enter Katrina's residence, thereby relieving the State of its obligation to prove defendant entered Katrina's residence without permission and negating his consent defense. Defendant's argument is belied by the entirety of the trial judge's instructions, which largely tracked the model jury charge. See Model Jury Charges (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18-2(b))" (rev. Mar. 14, 2016).

Prior to defining "purpose," – and consistent with the model jury charge and the burglary statute – the judge aptly instructed the jury on the elements of burglary: "In order for you to find the defendant guilty of burglary, the State must prove beyond a reasonable doubt the following elements: the defendant entered the structure known as K[atrina]'s apartment without permission; that the defendant did so with the purpose to commit an offense therein." (Emphasis added). See ibid.; N.J.S.A. 2C:18-2(a)(1). A jury charge that tracks the language of the governing statute, and is consistent with the applicable model jury charge, is not plainly erroneous. See State v. Rodriguez, 365 N.J. Super. 38, 53-54 (App. Div. 2003).

B.

Defendant further contends the trial judge erred in sua sponte failing to: dismiss the burglary count at the conclusion of the State's case, R. 3:18-1; or enter a judgment of acquittal notwithstanding the verdict, R. 3:18-2. Noting there was no evidence of forced entry, defendant argues "it was possible" he and Katrina "were already inside the apartment when she was pushed." Defendant's delayed argument fails under both Rules.

"At the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative," enter a judgment of acquittal "if the evidence is insufficient to warrant a conviction." R. 3:18-1. A trial judge may also enter a judgment of acquittal after a jury has returned a guilty verdict. R. 3:18-2; see Pressler & Verniero, Current N.J. Court Rules, cmt. 1 to R. 3:18-2 (2021). Under Rule 3:18-1, the trial judge must determine whether, viewing the evidence in its entirety and "giving the State the benefit of all favorable testimony as well as all . . . favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt." State v. Reyes, 50 N.J. 454, 458-59 (1967). "When a defendant moves for a judgment of acquittal after all the proofs, however, the court considers not only the evidence presented by the State, but

14

'the entirety of the evidence.'" State v. Lodzinski, 246 N.J. 331, 357 (2021), (Patterson, J., concurring) (quoting State v. Williams, 218 N.J. 576, 594 (2014)).

Here, the State presented sufficient evidence that defendant committed second-degree burglary under N.J.S.A. 2C:18-2(b)(1), where "in the course of committing the offense," he "[p]urposely, knowingly or recklessly inflict[ed] . . . bodily injury on [Katrina]." Katrina testified that, upon reaching her apartment door, she realized someone was behind her. After unlocking the door and pushing it, she turned toward defendant, asking: "What are you doing?" At that point, defendant pushed Katrina into the apartment, causing her to fall to the living room floor. Katrina told the jury "[i]t hurt" when she fell on the floor. She described a "big struggle" which preceded the sexual offenses. Katrina testified she never gave defendant permission to enter her apartment – or anywhere inside the building.

Katrina's testimony, in addition to the surveillance footage, provided sufficient evidence to present the case to the jury under Rule 3:18-1. Even in view of defendant's testimony to the contrary, that evidence also was sufficient to convict him of burglary under Rule 3:18-2.

IV.

Lastly, defendant argues his sentence is excessive. He asserts the judge erroneously imposed the maximum prison term on each conviction by improperly finding aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense), and two, N.J.S.A. 2C:44-1(a)(2) (the gravity and seriousness of harm to the victim). Defendant also contends the Yarbough[4] factors do not support the imposition of consecutive sentences. For the reasons that follow, we remand for resentencing.

Our analysis of these arguments is framed by well-settled principles. Ordinarily, we defer to the sentencing court's determination, State v. Fuentes, 217 N.J. 57, 70 (2014), and do not substitute our assessment of the aggravating and mitigating factors for that of the trial judge, State v. Miller, 205 N.J. 109, 127 (2011); see also State v. Case, 220 N.J. 49, 65 (2014). We will not disturb a sentence that is not manifestly excessive or unduly punitive, does not constitute an abuse of discretion, and does not shock the judicial conscience. See State v. O'Donnell, 117 N.J. 210, 215-16 (1989). However, our deference "applies only if the trial judge follows the Code and the basic precepts that channel sentencing discretion." Case, 220 N.J. at 65.

---

[4] State v. Yarbough, 100 N.J. 627 (1985).

16

## A.  Aggravating Factors One and Two

At sentencing, the trial judge found aggravating factors one, two, three, and nine.  See N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the offense); (a)(2) (the gravity and seriousness of harm to the victim); (a)(3) (the risk of re-offense); (a)(9) (the need to deter defendant and others).  The judge contemplated mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (the absence of a prior criminal record), but did not find that factor because defendant had a prior domestic violence offense.  The judge concluded the aggravating factors substantially outweighed the non-existing mitigating factors.[5]

We review a trial judge's findings as to aggravating and mitigating factors to determine whether the factors are based on "competent, credible evidence in the record."  O'Donnell, 117 N.J. at 215.  "To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence."  Case, 220 N.J. at 65.  "Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime," State v. Lawless, 214 N.J. 594, 608 (2013), which "would result in impermissible double-counting," State v. A.T.C., 454 N.J. Super. 235, 254 (App.

---

[5]  Defendant does not challenge the imposition of aggravating factors three and nine, or the absence of mitigating factors.

Div. 2018); see also Yarbough, 100 N.J. at 633. We will remand for resentencing if the sentencing court considers an inappropriate aggravating factor. Lawless, 214 N.J. at 604-05.

While "sentencing courts frequently apply both aggravating factors one and two, each requires a distinct analysis of the offense for which the court sentences the defendant." A.T.C., 454 N.J. Super. at 255 (quoting Lawless, 214 N.J. at 600). When evaluating aggravating factor one, "[a] sentencing court may consider 'aggravating facts showing that [a] defendant's behavior extended to the extreme reaches of the prohibited behavior.'" State v. Miller, 237 N.J. 15, 29 (2019) (alterations in original) (quoting Fuentes, 217 N.J. at 75).

Aggravating factor two "focuses on the setting of the offense itself with particular attention to any factors that rendered the victim vulnerable or incapable of resistance at the time of the crime." Lawless, 214 N.J. at 611. As the Court has noted, "psychological harm . . . has been considered relevant under this aggravating factor." State v. Kromphold, 162 N.J. 345, 357 (2000); see also State v. Logan, 262 N.J. Super. 128, 132 (App. Div. 1993) (finding aggravating factor two applied where the defendant caused psychological harm to a sexual assault victim).

Here, the judge assigned "some weight" to aggravating factor one, finding defendant "came up from behind [Katrina] and ambushed her." According to the judge: "That alone is aggravating factor number one, the nature of the offense. [Defendant] absolutely surprised her and [he] stalked her."

While the surveillance video depicts defendant's minivan driving alongside Katrina as she was walking, then rushing into her apartment building after she entered, Katrina was unaware that defendant was "stalking" her. However, because we agree that defendant ambushed Katrina in the sanctity of her home – and because the judge assigned minor weight to aggravating factor one – we discern no reason to disturb the judge's finding.

Turning to aggravating factor two, the judge found defendant caused "tremendous harm" to Katrina, thereby assigning this factor "tremendous weight." To place the judge's findings in context, we note – similar to defendant's trial – the sentencing hearing was marked by two vastly different arguments.

Against the advice of counsel, defendant made a lengthy statement on his own behalf. He claimed he forgave Katrina "for all the evil [she did to him]; for lying; destroying [his] life; and destroying [his] family's life." Defendant accused Katrina's friends of manipulating her to file false charges against him.

A-5901-17

Conversely, Katrina's loved ones spoke of a young woman who was shattered emotionally after the incident: A "young, vibrant woman," whose "life has forever been changed." According to her aunt, Katrina "thought[] of ending her own beautiful life." Katrina's mother told the judge Katrina cried "hysterical[ly]" when drafting her victim-impact statement.

In finding aggravating factor two, the judge elaborated:

> I've heard today about K[atrina] sobbing to her family and friends, the letters and what I hear today, of thoughts of suicide, that's today.
>
> The day of the incident, afterwards her family and friends found her curled up in her bed in the fetal position, near lifeless.
>
> She felt so unsafe in her room, that at times she slept with her roommate [be]cause she didn't even want to be alone in her own bed.
>
> But that got worse. She couldn't even bear that. So, she moved out of Hoboken but continued to work in New York, but endured having to commute a . . . much longer commute and not be[ing] with her friends just because she feared being alone. She didn't fear that before April 23, 2017.
>
> . . . .
>
> []I remember K[atrina] testifying and even though she's not here today, I incorporate that into my finding of aggravating factor number two. She was crying. She was ashamed. She had a very low voice. She was hurt. Those are all certainly harms.

A-5901-17

The judge's detailed findings dispel defendant's contentions that "the court did not put forth its reasoning for finding this factor or why it was putting tremendous weight on it." The psychological harm to Katrina recounted by the judge, see Kromphold, 162 N.J. at 357; Logan, 262 N.J. Super. at 132, finds support in the record, see O'Donnell, 117 N.J. at 215. Moreover, because Katrina was taken off guard as she entered her home, and overpowered by defendant thereafter, the record further demonstrates she was "incapable of resistance at the time of the crime." Lawless, 214 N.J. at 608.

## B. Consecutive Sentences

In imposing consecutive sentences, the trial judge recognized Yarbough as controlling precedent. In Yarbough, our Supreme Court set forth the following "criteria as general sentencing guidelines for concurrent or consecutive sentencing decisions":

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

21

(a)  the crimes and their objectives were predominantly independent of each other;

(b)  the crimes involved separate acts of violence or threats of violence;

(c)  the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d)  any of the crimes involved multiple victims;

(e)  the convictions for which the sentences are to be imposed are numerous;

(4)  there should be no double counting of aggravating factors; [and]

(5)  successive terms for the same offense should not ordinarily be equal to the punishment for the first offense[.]

[100 N.J. at 643-44.]

A sixth factor, imposing an overall outer limit on consecutive sentences, was superseded by statute.  See State v. Eisenman, 153 N.J. 462, 478 (1998) (citing N.J.S.A. 2C:44-5(a)).

Like the statutory aggravating and mitigating factors, "[t]he Yarbough factors are qualitative, not quantitative," and "applying them involves more than merely counting the factors favoring each alternative outcome."  State v. Cuff,

239 N.J. 321, 348 (2019). Instead, the sentencing court must consider all the Yarbough guidelines, with emphasis on the five subparts of the third guideline. State v. Rogers, 124 N.J. 113, 121 (1991). Concurrent or consecutive sentences are at the discretion of the sentencing judge. See State v. Carey, 168 N.J. 413, 422 (2001) (citing N.J.S.A. 2C:44-5(a)). In applying the factors, "[t]he focus should be on the fairness of the overall sentence, and the sentencing court should set forth in detail its reasons for concluding that a particular sentence is warranted." State v. Miller, 108 N.J. 112, 122 (1987).

In his assessment of the Yarbough factors that supported consecutive sentences, the trial judge placed "the most weight on the first factor: There can be no free crimes." The judge also found defendant committed "three independent acts of violence," resulting in three separate convictions, and there was no double counting of the aggravating factors. Unsure whether defendant's objectives were predominantly independent of one another, the judge recognized the crimes were committed "very close in time," and involved a single victim.

Although these crimes could be viewed as part of a continuous episode of aberrant conduct, there is no question they represented separate violations of the victim. Defendant's pushing his way into Katrina's home and knocking her to the floor was different from his pinning her down and touching her vagina with

23

his finger and penis. As we recognized more than three decades ago in a similar case: "Clearly, the burglary offense is distinct and dissimilar [from] the sexual offense." State v. Mosch, 214 N.J. Super. 457, 462-63 (App. Div. 1986). Stated another way, defendant could have been charged and convicted of second-degree burglary without committing sexual offenses – and vice-versa. See id. at 463. Accordingly, we find no abuse of discretion in the court's imposition of consecutive sentences consistent with the Yarbough guidelines.

While this appeal was pending, however, our Supreme Court issued its opinion in State v. Torres, 246 N.J. 246 (2021). In that case, the Court exhaustively reviewed the Yarbough factors, while reaffirming the discretionary authority of trial courts to impose consecutive sentences by using those guidelines. Id. at 264-66. The Court reiterated that Yarbough requires the trial court to place on the record a statement of reasons for imposing consecutive sentences, which should address the overall fairness of the sentence. Id. at 267-68 (citing Miller, 108 N.J. at 122).

The Court further recognized that sentencing judges "often seized upon" the "no free crimes" factor identified in Yarbough. Id. at 269. However, after Yarbough was decided, the Legislature eliminated the sixth factor, which limited the overall length of consecutive sentences. Ibid. The Court explained that the

Yarbough "no free crimes" factor was part of "a set of considerations that originally included an outer limit."  Ibid.

As a result, the Court held:

> An explicit statement, explaining the overall fairness of a sentence imposed on a defendant for multiple offenses in a single proceeding or in multiple sentencing proceedings, is essential to a proper Yarbough sentencing assessment. . . . Acknowledging and explaining the fairness of the overall sentence imposed on the defendant advances critical sentencing policies of the Code, as amplified by Yarbough.  It remains, in fact, the critical remnant of accountability imposed by Yarbough, since the legislative elimination of the outer limit imposed by factor six.
>
> [Id. at 268.]

In the present matter, the trial judge assessed the applicable Yarbough factors, relying heavily on the "no free crimes" factor.  He did not address explicitly or implicitly, the overall fairness of the maximum, consecutive sentences imposed on defendant, who had no prior indictable convictions.  Consistent with the Court's advisement in Torres, we therefore remand for the trial judge to provide "[a]n explicit statement, explaining the overall fairness" of the sentences imposed.

Consequently, we vacate the sentence imposed and remand the matter for resentencing in light of the Court's admonition in Torres.  We express no

25

position on the appropriate aggregate sentence.  In all other respects, we affirm defendant's convictions.

Affirmed, and remanded for resentencing.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION