**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5623-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KATRELL TRENT,

    Defendant-Appellant.

_____

Submitted January 20, 2022 – Decided April 4, 2022

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 17-11-0775.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia Blum, Assistant Deputy Public Defender, of counsel and on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Patrick R. McAvaddy, Assistant Prosecutor, on the brief).

PER CURIAM

Tried by a jury, defendant Katrell Trent was convicted of second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1), second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1), and the second-degree aggravated assault of Terrell Corbin. The trial judge sentenced defendant on the weapons offenses to concurrent five-year prison terms, subject to a Graves Act one-year parole ineligibility. See N.J.S.A. 2C:43-6(c). The judge imposed a concurrent eight-year term of imprisonment on the aggravated assault, subject to the No Early Release Act's (NERA) eighty-five percent parole ineligibility. See N.J.S.A. 2C:43-7.2. The jury acquitted defendant of a charge of first-degree attempted murder of Corbin, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1), and second-degree serious bodily injury assault of Davon Gordon, N.J.S.A. 2C:2-6 and 2C:12-1(b)(1). We affirm the convictions and sentence.

At trial, Corbin testified that in the early morning hours of June 4, 2016, he and Gordon passed a bar; Corbin noticed a group of about ten to fifteen men standing outside. As they went by, Gordon exchanged words with someone in the group. Corbin was on his phone and did not hear what was said.

Gordon parked about a block away, and as the men walked back, someone approached Corbin and asked if Corbin had said an obscenity to him earlier. Corbin denied doing so, turned away, and was shot in the left buttock.

Police recovered security camera recordings from the area, from which they extracted still photographs. The surveillance videos and the photographs were shown to the jury, and while testifying, Corbin described his assailant as brown-skinned, with a short haircut, and wearing a red hoodie. He identified a man in the video as the shooter, although he could not identify defendant in court.

Tavin Robinson, a participant in the assault charged by separate indictment, identified defendant as the man wearing red in a recorded interview with police. Robinson's interview was played for the jury after he repudiated his statement on the stand. See State v. Gross, 121 N.J. 1 (1990), and N.J.R.E. 803(a). That repudiation included Robinson claiming police made him memorize a lengthy narrative before the recording equipment was activated.

After he was shot, Corbin was pummeled and "stomped" by the shooter and his companions, whom Corbin identified as a bald man, a man with dreadlocks, and a man with a ponytail. As he was beaten, Corbin lay curled on the ground in the fetal position. When his assailants heard the sound of gunfire,

they fled.  The surveillance videos show the man in the red shirt throwing away a black object, which the State contended was the gun used to shoot Corbin. Corbin got up and tried to rouse Gordon, who was prone between two parked cars.  Gordon had been shot multiple times and could not move; he was hospitalized but died hours later.

A nearby resident testified that he was awakened by the sound of a gunshot, and when he looked out the window, he saw a group of men brutally beating someone who was lying on the ground.  The witness said there were three assailants, including a man in a red shirt.

During deliberations, the trial judge allowed jurors to have the State's transcription of Robinson's recorded statement.  The judge's instructions did not include a specific unanimity charge; none was requested.  The transcript of Robinson's Mirandized statement was admitted into evidence.

On appeal, defendant raises the following four points:

POINT I

IT WAS REVERSIBLE ERROR FOR THE PROSECUTOR TO DEFINE REASONABLE DOUBT AS A "GUESSTIMATED" MATHEMATICAL CALCULATION.

## POINT II

THE ASSAULT CONVICTION MUST BE REVERSED BECAUSE DIFFERENT JURORS MAY HAVE CONVICTED OF ASSAULT BASED ON DIFFERENT ACTS, BUT THEY WERE NOT REQUIRED TO IDENTIFY THE ACTS OR TO FIND ONE ACT UNANIMOUSLY.

## POINT III

IT WAS REVERSIBLE ERROR FOR THE COURT TO GIVE THE JURY A TRANSCRIPTION OF ROBINSON'S VIDEORECORDED PRETRIAL STATEMENT IMPLICATING DEFENDANT IN THE ASSAULT, DESPITE THE FACT THAT THE JURY DID NOT REQUEST THE STATEMENT AND ROBINSON DISAVOWED THE STATEMENT AT TRIAL.

## POINT IV

THE SENTENCE OF EIGHT YEARS, SIX YEARS AND TEN MONTHS WITHOUT PAROLE, IS BASED ON UNSUPPORTED AGGRAVATING FACTORS AND IMPROPERLY REJECTED MITIGATING FACTORS, AND IS EXCESSIVE.

I.

Defendant's first objection is to the prosecutor's comments during summation. The prosecutor said:

> So let's talk about reasonable doubt. And it's true, people always want some quantification. What percentage? There's no percentage. And it's supposed to be that way.

5

But let me ask, offer two potentially useful insights. Let me actually first correct something counsel[] said last night.

Mr. Robinson's attorney said if you have any doubt, if you have a duty or responsibility and an obligation, not guilty. That is simply not accurate. The law is right before you and the Judge will read you the law.

As it says, we know very few things for absolute certainty, so that doesn't say that you have to have no doubt. It's reasonable doubt. And here's what I would suggest. That first word is every bit as important as that second word.

Right? Don't drop it out. Reasonable qualifies what that doubt has to be. So what I did on the bottom is I, and I hope I don't offend anyone, I approximated maybe average ages of the jurors. 40. Right? Let's take that number.

And there'll be 12 of you deliberating. So 40 times 12 times 365 days in the year. What we have is the number of days that you have been on this planet collectively. Obviously guesstimated. Here's the question, right? That I think you should ask yourself.

Is this something that doesn't happen every day? Or is this something that doesn't happen every day? Because if it hasn't happened in y[o]ur collective 175,000 days on the Earth, then I think you have some good insight into whether, whatever doubt you may or may not have would be reasonable.

[19T69:1-70:8]

A-5623-18

We assess defendant's assertion of prejudice within the context of the judge's instruction in the model closing charge, Model Jury Charges (Criminal), "Criminal Final Charge" (rev. May 12, 2014), that the comments of the attorneys are not the law. Even in the absence of that context, it seems clear that the prosecutor's intent was to merely dramatize the fact that jurors bring their common sense and life experiences to deliberations. Before the analogy, he said that "the law is right before you and the judge will read you the law." Thus, his statement could not have confused the jurors into thinking that reasonable doubt was defined by anything other than the judge's instructions, which reiterated the definition of reasonable doubt both in the opening and the closing charge. The contention that the prosecutor's characterization misled the jury into a different, improper definition of reasonable doubt has no merit.

During deliberations, the jury expressed concern they might be unable to reach a unanimous verdict on all the charges. Nothing in the record connects their concern with the prosecutor's analogy. The jury's comment, along with their request for playbacks of testimony and video recordings, does not manifest a misunderstanding of the meaning of reasonable doubt. Instead, it signifies their careful and thoughtful consideration of the case, and ultimate decision— which included defendant's acquittal of some of the charges.

A-5623-18

The proofs in this case demanded careful scrutiny. The prosecutor's statement, to which no objection was raised, was not an infringement on defendant's right to a fair trial. It was not plain error, a misstatement "of such a nature as to have been clearly capable of producing an unjust result." See R. 2:10-2; State v. Maloney, 216 N.J. 91, 104 (2013).

## II.

Defendant's next point, that a unanimity jury instruction was necessary as to the aggravated assault, is anchored in his position that some jurors may have convicted because they believed he shot Corbin, while others may have done so because they believed he punched or kicked Corbin, or in some other way participated in the melee. Thus, he argues, the verdict might not have been unanimous.

Defendant did not request a unanimity instruction during trial. Since the challenge to the charge is being raised for the first time on appeal, we review it under the plain error standard. State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003). We presume the instructions were adequate. Ibid.

In State v. Parker, the defendant was charged with sexual assaults involving several students. 124 N.J. 628, 632 (1991). The Supreme Court directed that where "a danger [exists] of a fragmented verdict[,] the trial court

must upon request offer a specific unanimity instruction." Id. at 637. But the failure to charge does not necessarily constitute reversible error. Ibid. The danger of a fragmented, non-unanimous verdict arises only "where the facts are exceptionally complex, or where the allegations in a single count are either contradictory or only marginally related to one another, or where there is a variance between the indictment and the proof at trial, or where there is a tangible indication of jury confusion." Id. at 636 (citations omitted).

Because the acts in Parker, even though they involved different students, stemmed from the defendant's violation of the special relationship between teacher and student, the Court found no need for a unanimity charge. Id. at 639. Furthermore, the Court concluded the jury was not confused about reaching a unanimous verdict, although it asked questions regarding official misconduct and endangerment. Ibid.

In State v. T.C., 347 N.J. Super. 219, 223 (App. Div. 2002), the defendant engaged in several forms of physical abuse and negligence of her son over a period of roughly fifteen months. Because "there was no indication of juror confusion, nor were there two separate theories being submitted to the jury[,]" there was no need for a unanimity instruction, and no error by its omission. Id. at 243. This was true even though jurors may have convicted the defendant on

her commission of different acts: "[t]here was but one theory of ongoing emotional and physical abuse over a period of time[.]" Ibid.; see also State v. Kane, 449 N.J. Super. 119, 127-42 (App. Div. 2017) (where defendant assaulted victim on different occasions during a single evening, causing multiple injuries, no unanimity instruction was necessary because defendant's conduct was a "continuum of violence.").

The assault in this case involved a continuum of violence. It is noteworthy that the jury convicted only defendant of aggravated assault upon Corbin, and either acquitted the remaining co-defendants or found them guilty of simple assault. There was "no realistic possibility that a minority of jurors was willing to ground" the aggravated assault conviction on the punching and kicking as opposed to the shooting. See Kane, 449 N.J. Super. at 142.

## III.

Rule 1:8–8 provides that "[t]he jury may take into the jury room the exhibits received in evidence . . . . " State v. A.R., 213 N.J. 542, 560 (2013). This language does not distinguish "between testimonial evidence, such as statements or depositions, and non-testimonial evidence," and if read literally, the rule would authorize the presence of all exhibits in the deliberation room. Ibid. However, courts have held that a jury cannot be permitted unfettered

10

access to video exhibits.  Ibid.; State v. Burr, 195 N.J. 119, 134 (2008); State v. Weston, 222 N.J. 277, 289-94 (2015); State v. Michaels, 264 N.J. Super. 579, 643-44 (App. Div. 1993).  As the Court explained in Burr,

> [A] video replay . . . presents much more information than does a transcript reading. In essence, the witness is brought before the jury a second time . . . . The witness' words and all of the animation, passion, or sympathy originally conveyed are again presented to the jury. It is difficult to deny that there is an advantage that may be gained in such circumstances.
>
> [195 N.J. at 133 (quoting Michaels, 264 N.J. Super. at 644).]

Thus, when confronted with a jury's request to view a video exhibit a second time, a trial court must abide by certain specific procedural safeguards.  Id. at 135.

With regard to this jury's access to transcripts in the deliberation room, which defendant challenges, the law is different.  There is "no error in admission into the jury room of transcripts of tape recordings of conversations obtained by the State."  State v. DeBellis, 174 N.J. Super. 195, 199 (App. Div. 1980).  A judge may admit them where he is "certain that they [are] reasonably accurate," and the judge instructs the jury as to their reliance upon the transcripts.  Ibid.

The judge did not instruct the jury that the controlling evidence was the video, not the transcript.  However, the lack of warning is inconsequential since

11

defendant does not challenge now, nor did he at trial, the accuracy of the transcript.

Robinson did not say he saw defendant with a gun; neither did the neighbor. Defendant's weapons convictions were likely the result of Corbin's testimony that someone wearing red clothing shot him and assaulted him, and his identification of that person on the surveillance video. Robinson's statement to the police linked Corbin's identification to defendant by naming the person wearing red clothing. The jury heard at least three times during trial that Robinson had told police the person in red clothing was defendant. Thus, the admission of the transcript did not prejudice defendant because its impact was likely minimal.

Defendant's claim that the jury might have convicted because they might have given more weight to the transcript of Robinson's statement, as opposed to Robinson's renunciation of it while on the stand, requires little discussion. Robinson's narrative was probably rejected by the jury because it was so implausible—that police invented a lengthy story and forced him to memorize it before he was interviewed on camera.

A-5623-18

## IV.

Finally, defendant contends that the sentence imposed on him, a NERA eight-year term, is based on unsupported aggravating factors and improperly rejected mitigating factors and is therefore excessive. We do not agree that the judge's analysis did not support the aggravating factors he found. Aggravating factor three, N.J.S.A. 2C:44-1(a)(3), risk of recidivism, was justified by defendant's prior contacts with the system, and the fact, as the judge noted, that defendant's crimes escalated in intensity over time. Aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), the need to deter, was highly relevant given the violent nature of defendant's conduct.

The judge gave defendant the benefit of the doubt in awarding mitigating factor seven, N.J.S.A. 2C:44-1(b)(7), since his criminal history was mainly in the juvenile court. Nothing about the sentence shocks our conscience. See State v. Roth, 95 N.J. 334, 364-65 (1984). It included terms of parole ineligibility required both under NERA and the Graves Act.

We review sentencing decisions deferentially. State v. Fuentes, 217 N.J. 57, 70 (2014). This means a sentence is affirmed unless the judge violated the sentencing guidelines, found aggravating and mitigating factors not based on competent credible evidence, or misapplied the sentencing guidelines. Roth, 95

N.J. at 364-65.  The judge fully explained his analysis.  <u>Fuentes</u>, 217 N.J. at 73.

No abuse of discretion occurred.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5623-18